## BRINK *v.* MORTON *et al.*

Where in a suit in chancery to enforce the specific performance of a contract to convey real estate, one of the respondents filed an answer not under oath, to which a replication was filed, and the cause was then continued; and where at a subsequent term, and after depositions had been taken, the respondent was permitted, against the objection of the complainant, to file an amended and sworn answer; *Held*, That the court did not err in allowing the answer to be filed.

The legislature possessed the power to amend the practice in relation to pleadings in chancery, so that amendments may be permitted, which had not, before been allowed.

Sections 1756 to 1759 of the Code, inclusive, apply to proceedings in equity, as well as at law.

Where the condition in a bond for the conveyance of real estate, read as follows: "Whereas the above-named B. pays to the above M., two promissory notes—one fifty dollar note, payable on demand, at ten per cent. interest; the other payable in one year from date, two hundred dollars, at the rate of ten per cent. Whereas, if B. pays the above sum to the above M., at the expiration of the year, then the above-named M. does deliver unto the above-named B., at the expiration of the year, August 8th, 1854, a deed, with general warranty [here follows a description of the land]; then this obligation to be null and void—otherwise to remain in full force and virtue in law;" *Held*, That time was not of the essence of the contract.

Where in a suit to enforce the specific performance of a contract to convey real estate, against the vendor and a subsequent purchaser, with notice of the rights of the original vendee, it appeared from the testimony, that the vendor had placed the original vendee in possession of the premises; that the said vendee had paid part of the purchase money, which the vendor still retained, and had made improvements on the land; that the notes for the unpaid portion of the purchase money, bore the highest rate of interest; that the land had enhanced in price; that the balance of the purchase money was brought into court; that the vendor had never put an end to the contract, by refunding the money paid, giving up the note for the balance due, and making, or offering to make, reasonable compensation for the improvements made; and that the subsequent purchaser from the vendor, had notice of the rights of the complainant; and where the suit to enforce the performance of the contract, was commenced in about three months after the last payment became due; *Held*, That the contract should be specifically performed.

Where in such a case, the defendant alleged that the contract sought to be enforced, had been obtained by the fraudulent representations of the complainant, setting out the alleged representations; and where the respondent requested a jury to try the issues of fact raised by the pleadings, and a jury

was thereupon called, and issues submitted to them, among which was the following: "Did the complainant procure the execution of said bond by means of false and fraudulent inducements held out by him to the respondent?" to which the complainant objected; and where the jury found the said issue in favor of the respondent; *Held*, That the issue presented to the jury, was broader than that made by the pleadings, and was erroneous.

Although a defendant may answer, setting up fraud generally, yet if he alleges a particular state of fraud only, he will be confined in his evidence, to proof of the fraud alleged ;. and the issue submitted to the jury, must not enlarge the pleadings.

And where in such a case, upon an issue of fraud in procuring the execution of a contract, the jury found for the respondent, and the court thereupon dismissed the bill of the complainant; and where the evidence submitted, did not support the finding, the Supreme Court reversed the decree, and refused to submit the issue to a jury a second time, but instructed the court below to render a decree in favor of the complainant.

## *Appeal from the Jones District Court.*

THIS was a bill filed to enforce the specific performance of a contract to convey land, contained in a title bond, dated August 8th, 1853, containing the following condition: "That whereas the above Austin Brink pays to the above Ezra Morton two promissory notes, one fifty dollar note, payable on demand, at ten per cent. interest; the other payable in one year from date, two hundred dollars, at the rate of ten per cent.; whereas if Elijah Austin Brink pays the above sum to the above Ezra Morton, at the expiration of the year, August the 8th, 1854, a deed with general warranty, conveying to him so much of (here follows a description of the land), then, this obligation to be null and void, otherwise to be and remain in full force."

The petition states, that defendant executed this bond; that petitioner executed and delivered to the defendant the two notes named therein; that defendant gave to petitioner possession of the premises; that petitioner erected a house on said land; that he had the assistance of Morton in so doing; that his sister lived in it during a part of the past winter, and that when she left it, petitioner leased it to another person; that there was on a part of the land purchased, a house and about three acres broken, which pe-

Brink v. Morton et al.

titioner inclosed; that petitioner leased this house and the land under cultivation, and his tenant had raised a crop on shares on it, a part of which is not yet harvested; that petitioner paid the note on demand, and went to Pennsylvania last fall, intending to remove his family in the spring, but in March last was taken sick, and remained sick a long time, and was prevented from reaching Cedar county, until the latter part of September, 1854; that at the time of the purchase, petitioner informed defendant Morton, that he expected to commence merchandising, and desired to know, that if he wanted the time extended on the last note six months, whether the defendant would do it, and defendant informed petitioner that he would; that about July last, petitioner being still detained in Pennsylvania, by sickness, wrote to Ephraim Brink, and requested him to call on Morton, and inform him, that if he must have the money on the day when the note fell due, it should be paid, but soliciting an extension of the time, in consequence of his detention in Pennsylvania; and petitioner charges that in July, 1854, before the said note for two hundred dollars became due (petitioner having paid the fifty dollar note), the father of petitioner went to said Morton, at the request of petitioner, and requested an extension of time on said note, and informed him, that if the money must be paid, that it should be ready when the note fell due, and that defendant thereupon informed the father of petitioner, that he had agreed at the time the note was given, to extend the time for payment six months, and that he would extend it six months; that if he should conclude to go east during the summer, he might want a hundred dollars; Ephraim told him he should have it, but defendant neither went east, nor called for the one hundred dollars; that defendant, in violation of his contract, without tendering to petitioner the money paid and the note; and without tendering him a deed, on the 8th of August, 1854, and before the days of grace on the note had expired, made a contract for the sale of said tracts of land, so sold to petitioner, to one Charles Williams, for the sum of four hundred and fifty dollars, and some time afterwards,

about the 20th of August, gave a deed therefor to said Wil-
liams. The petition further states, that said Williams had
actual notice that petitioner had made a contract with Mor-
ton for the purchase of said land, and that petitioner's pos-
session of said land, was open and notorious in the neighbor-
hood. And that soon after petitioner reached the county
of Cedar, in September, 1854, he informed Morton that he
was ready to pay him the balance of the purchase money;
and on the 25th of October, 1854, petitioner made him a
tender of the balance due on the said. land, in specie, and
the defendant refused to comply with the contract on his
part. The petition charges that defendants hold the land
in trust for petitioner, and prays that they may be decreed
to specifically execute the trust; and alleges the bringing
of the money into court, and offers to perform the con-
tract, &c.

This petition was filed on the 4th of November, 1854. On
the 9th of May, 1855, an answer was filed by each of defend-
ants, and on the same date, a replication to said answers.
Neither of these answers was upon oath. At the Septem-
ber term of the court, in 1855, the defendant Morton was
permitted to file an amended answer, on oath. The answer
of Williams denies notice ; admits the purchase, and the re-
ceipt of a deed, on the 6th of September, 1854, by which he
holds. In the amended answer, Morton admits the execu-
tion of the bond ; avers that the inducement which led him
to the execution of the bond, was the express agreement of
the plaintiff, to establish on said land a store, for the accom-
modation of defendant and the neighborhood ; that said in-
ducement was falsely and fraudulently held out to him by
the plaintiff, in order to get him to execute said bond, the
plaintiff not intending at the time to establish a store on
said land. It also admits that plaintiff soon after the execu-
tion of the bond, went to Pennsylvania, and did not return
until September, 1854 ; that he knows nothing of defend-
ant's sickness, and requires proof thereof; that at the time of
the execution of the bond, the plaintiff informed him that
he expected to commence merchandising, but denies that de-

fendant informed plaintiff, that he would extend the time on the last note, as stated in petition, but admits that he did say to plaintiff, that in case he should find himself cramped for money in his business of merchandising, in consequence of selling goods on credit, from his contemplated store, then and in that case, this defendant promised the plaintiff, that he would wait for awhile beyond the specified time, for a portion of the money, namely, for one hundred dollars, and no more, and that only on the above condition; denies that he informed Ephraim Brink, in July, 1854, that he had agreed to extend the time for the payment of said note six months, at the time said note was given, or that he agreed to extend the payment of said note six months; but avers the truth to be, that within a few days of the time when said note fell due, the said Ephraim called on the defendant, and said he had not heard from the plaintiff for some time, and wanted to know of defendant, if he wanted his money, to which defendant replied, he did, and must have one hundred dollars, and interest on the whole, at all events; and defendant denies that this was conditioned on his going east as stated; and denies that in September, 1854, plaintiff informed him that he was ready to pay the balance as stated, but on the contrary, insisted that it was, and had been, paid. The answer further denies, that any tender was made to him, as stated in said petition, or any other tender, and that plaintiff has been ready and willing to comply with said contract on his part.

To the amended answer, no replication appears to have been set up, but to the answers as they originally stood, before the amendment of Morton's, there is a general replication, accompanied by an agreement of counsel, that the same shall be taken as specific denials of the allegations of the answers. But both parties have, in this court, treated the answers as though replied to. To try the issues of fact raised by these pleadings, the defendant requested a jury. A jury was called. On the part of the plaintiff, the court was requested to submit the following issues:

1st. Did the plaintiff, Elijah A. Brink, and Ezra Morton,

make the contract named in the petition, dated on the 8th day of August, 1853 ?

2d. Did Brink, the plaintiff, pay the first fifty dollars required to be paid by the contract?

3d. Did the defendant agree with the plaintiff, or his agent, to waive the payment of the $200, at the precise time when it fell due ?

4th. If no agreement was made to extend the time of payment, was the plaintiff detained from Iowa in Pennsylvania, by sickness, and did he return to Iowa, in September following ; and did he in September, soon after his return, offer to pay to the defendant Morton, the amount of the note and interest, and demand a deed ?

5th. Did Charles Williams, at the time he purchased the land of Morton, know that Morton had made a contract with the plaintiff for the sale of the land in dispute, and that the plaintiff had paid a part of the purchase money ?

6th. Did the plaintiff offer to the defendant, to pay him the note due for the land, in the month of October, 1854 ?

The defendant submitted the following :

1st. Whether the plaintiff has satisfied them, the jury, that the defendant agreed to extend the time of payment for six months, or any other time, on the note of $200?

2d. Did the plaintiff ever unconditionally tender to the defendant, the amount of said note of $200, and interest? If so, when was this tender made?

3d. Did the defendant Charles Williams, purchase said land in good faith, for a valuable consideration, without notice that the plaintiff had any legal claim for and upon said land ?

4th. Did the plaintiff procure the execution of said bond, by means of false and fraudulent inducements, held out by him to the defendant? To the issues submittted by defendants, the plaintiff excepted, as not being proper issues, but the exception was overruled by the court.

A great number of instructions were given to the jury, at the instance of the parties, but as they are not material to the decision of the court, they are here omitted. The jury re-

Brink v. Morton et al.

turned a verdict, finding all the issues submitted by the complainant, except numbers one, two, and five, for the defendant, and these were found for the plaintiff. On the issues submitted by the defendants, and to which the complainant objected, the finding of the jury was for the respondents, The complainant then filed a motion to set aside the verdict, and for a new trial, which was overruled, and a decree rendered dismissing the bill, at the cost of the complainant, from which he appeals. The evidence in the case, is sufficiently stated in the opinion of the court.

*Whitaker & Grant*, for the appellant.

*Cook & Dillon*, for the appellees.

ISBELL, J.—This case, as presented to the court, raises a multitude of questions, upon the discussion of which, unless absolutely necessary, we do not choose to enter in detail. We are constrained to the conclusion, that in the zeal manifested by counsel in the discussion of minor questions, the more important have been measurably overlooked, or lost sight of. The first point made by counsel, demands our attention, as lying in the way of arriving at the merits of the case. It is insisted, that the court erred in permitting the defendant Morton, to file an amended and sworn answer. We think the defendant's counsel have fully and properly met this objection. The Code, from section 1756 to 1759, inclusive, evidently shows the intention of the legislature to be, that a very liberal policy with regard to amendments should be adopted. By the latter clause of section 1758, amendments shall be allowed in any stage of the proceedings, upon such terms as the court deems just. In the case before us, the objection is not, that unjust terms were prescribed for the amendment, but that the amendment was allowed on any terms. The question is not now as to the effect of the amended answer as evidence, but as to the power of the court to allow it. Of the power of the legislature to amend the practice in relation to pleadings in chancery, so

that amendments may be permitted, which had not before been, we have no doubt.    And that the framers of the Code, and the legislature which adopted it, intended the provisions of these sections to apply to proceedings in equity, as well as at law, if they did not actually intend to reduce the pleadings in both to one common system, there can be little question.    We hold, therefore, that it was within the discretion of the court to permit the amendment.

We propose to pass over, for the present, the several other points made by the plaintiff, and inquire as to the last point, namely, whether the court should have entered a decree for the plaintiff, *non obstante veredicto*.    The first question which arises in this inquiry, is, was time of the essence of the contract, which is at the foundation of this suit.    The condition of the bond, is very inartistically drawn.    It recites that, " whereas the above-named Austin Brink pays to the above Ezra Morton, two promissory notes, one fifty dollar note, payable on demand, at ten per cent. interest; the other payable in one year from date, two hundred dollars, at the rate of ten per cent.    Whereas, if Elijah Austin Brink pays the above sum to the above Ezra Morton, at the expiration of the year, then the above-named Ezra Morton does deliver unto the above-named Elijah Austin Brink, at the expiration of the year, August the 8th, 1854, a deed with general warranty (here follows a description of the land, and the bond concludes), then this obligation to be null and void, otherwise to remain in full force and virtue in law."    We understand the intent of the parties, by this condition, to be that Morton should bind himself to convey at the expiration of a year, provided the purchase money was paid.    The notes were running at the highest rate of interest known to the law.    The security was in the hands of the obligor, and although one of the notes was liable to be demanded at any time, either by suit or otherwise, the obligor did not even take the precaution, to make the condition of the bond to depend upon the several sums being paid, as they should respectively fall due; and it is admitted by the answer, that, up to within a few days of the time the two hundred dollar

note fell due, defendant (Morton) insisted upon payment of part of the amount, and interest on the whole, when the note fell due, showing that he then relied upon his money and interest, and not upon any forfeiture.   We see nothing to justify the conclusion, that at the time of the execution of the bond, the parties regarded time as of the essence of the contract.   The execution of the bond—the payment of the fifty dollar note—the fact that plaintiff entered into possession, and made improvements—and that defendant Morton, "without tendering to petitioner the money paid, and the note or a deed, on the 8th of August, 1854, before the days of grace had expired on the note," sold to defendant Williams—are facts charged in the petition, and not denied in the amended answer of Morton; and the latter fact is not denied in the answer of defendant Williams.   That the land had risen in value, either by the improvements of plaintiff, or from other cause, is apparent from the price admitted to have been paid by Williams.   That defendant Williams, at the time he purchased the land of Morton, knew that Morton had made a contract with the plaintiff for the sale of the land in dispute, and that the plaintiff had paid part of the purchase money, is found by the jury, in response to the fifth issue presented by plaintiff, although in response to the third issue of defendant, the jury find that Williams purchased the land in good faith, for a valuable consideration, without notice that the plaintiff had any legal claim for, or upon, the land.

At first view, these findings would appear contradictory, and they are, in fact, so, except in one view, of which we shall speak hereafter, namely : that although Williams knew of the contract, yet, inasmuch as the jury believed it void for fraud, it was not a legal claim for or upon the land.   We grant the proposition contended for by defendants, that an application to enforce a specific performance, is addressed to the sound discretion of the court ; and admitting, for the present, that this bond was not void on account of fraudulent representations or inducements to procure its execution, and admitting all the other issues which are found for the defendants, and we can but conclude, that there is a strong

case—a case calling loudly for the interposition of the power of this court—to enforce specifically the performance of the contract. Compensation, and not forfeiture, is a favorite maxim of courts of equity. In the making this contract, the defendant had provided for the highest rate of compensation, for delaying the payment of the money, by stipulating for ten per cent. He had allowed the plaintiff to expend his means in improving the land, and let him into possession. He had received a part of the purchase money, and still retains it. He could have filed his petition, asking the court to require the purchaser to perform his contract, or to foreclose and sell his interest in the property (Code, § 2094), and thus recover his money. If time had been of the essence of the contract with plaintiff, it is true that his vendor, on a forfeiture occurring, might have sold to a third person, leaving the party to his action for the money advanced; but here, no such state of case existed; time was not made of the essence of the contract. We say nothing here of any extension of the time for payment of the $200 note, or of the question of tender, and demand before the bill was filed; for long prior to the time of filing the bill, the defendant Morton, had put it out of his power to convey, unless Williams should be first charged with notice. The money was tendered in court, on the filing of the bill. This was only about three months after it became due, the bill being filed on the 4th November, 1854. Admitting, then, that it was competent for the defendant Morton, to put an end to the contract, on the failure of plaintiff to pay the $200 when due, by placing the plaintiff in *statu quo*, by refunding the money paid, delivering up the unpaid note, and making reasonable compensation for improvements made with the acquiescence of Morton, or offering to do these; it is not claimed by the answer, that defendant has at any time so put an end to the contract, although it is claimed that he mailed to plaintiff the unpaid note. Now, by decreeing that the contract shall be specifically performed, Morton will get all he contracted for, and compensation for delay. By refusing such decree, plaintiff is driven to circuitous litiga-

tion to re-instate his rights.   The defendant Williams, can claim no favor, having been an intermeddler in this contract. We conclude, therefore, that equity requires that the contract should be specifically performed, as the case stands upon the pleadings, and the issues as found, notwithstanding those found for the defendant, provided this contract was not procured by fraudulent means.

This leads us to a consideration of the fourth issue presented by the defendant, namely: " did the plaintiff procure the execution of said bond, by means of false and fraudulent inducements held out to him by defendant." This issue, as well as all the others, presented by the defendant, was excepted to by the plaintiff, as not being a proper issue to be presented to a jury, which exception was overruled.   The first question that arises, then, is, was this a proper issue ? If made by the pleadings, it was certainly material; for this court will not lend its aid to specifically enforce contracts, in favor of him who shall have procured their execution by fraud.   The issue, if it arises at all in the pleadings, arises from the new matter set up in the answer of Morton.   The language of the answer in this regard is, " This defendant states, that the inducement which led him to execute said bond to the plaintiff, was the express agreement of the plaintiff, to establish on said land a store, for the convenience of the defendant and the neighborhood; and defendant states that said inducement was falsely and fraudulently held out to him by the plaintiff, in order to get the defendant to execute the said bond, the plaintiff not intending at the time to establish a store on the said land."   From the manner counsel have treated this cause in the argument, we understand that the replication, although it bears date of filing prior to the amended answer, applies to the amended answer.   If this is so, taken with the agreement appended thereto, it constituted a specific denial of the several propositions contained in this statement of the answer.   The issues raised by this statement and the replication, were, when placed in their proper order: First, did the plaintiff agree with the defendant Morton, to establish a store on the land in contro-

.versy? If this issue is found in the affirmative; then, secondly, was this agreement made without the intention on the part of the plaintiff, at the time, to establish such store? If this issue is found in the affirmative; then, thirdly, was plaintiff induced by said agreement, to execute said bond? ·

It is readily obvious that the issue presented to the jury, was much broader than that made by the pleadings. The pleadings are made to apply to a particular case of fraud, while that presented by the court, may apply to any fraud. It is no answer to the objection urged to this issue, that fraud may be plead generally, and if any existed in the procuring the execution of the bond, that it ought not to be enforced; for, in the first place, although a defendant may answer as to fraud generally, yet if he states a particular state of fraud only, he will be confined in his evidence to that; and the issues may not enlarge the pleading; and, secondly, the plaintiff should only be required to come with proof to make his case good, as it stood upon the face of the pleadings. The evidence in chancery causes is generally, as in this case, by depositions, and it would work a great surprise, if a party were allowed to come up on the hearing, with issues more enlarged or different than those in the pleadings, in relation to which the evidence had been taken. The issues, properly speaking, are the facts alleged in the pleadings on the one side, and denied, in like manner, on the other. The fourth issue presented by defendant, and sustained by the court, not arising upon the pleadings, to the extent submitted to the jury, a question arises, admitting that if no other difficulty presented itself,·would it be proper in such state of case as is here presented, to enter a decree *non obstante?* The jury have found that the plaintiff procured the execution of the bond sought to be enforced specifically, by false and fraudulent inducements held out by him to defendant. In the face of this finding, although more general than the charge in the answer, it would appear against conscience to enforce the performance. But it would rather seem the duty of the court, to set aside the verdict in this particular, and remand the cause, that the proper issues

raised by the pleadings, might be passed upon by a jury. But, on a careful examination of the testimony, as to the issues of fraud made by the answer and replication, we conclude, that to remand the cause for the hearing of these issues by a jury, is not demanded at our hands, for the reason that there is not the shadow of testimony to sustain the charge, that plaintiff agreed to establish a store on the premises in controversy. This was new matter alleged by defendant Morton, and which it was incumbent upon him to prove. The only allusion to such agreement, that we are able to find anywhere in the testimony, is a statement of Morton himself, in a conversation with the father of plaintiff, testified to by Silas Ballow, in which Morton said " that he was disappointed in E. A. Brink; that he had sold the place, with the expectation of having a store go up there, to make a business place there." This being the state of the evidence, as to the main proposition contained in the issues relating to fraud, we conclude, that if Williams had notice of the contract, there was no such fraud shown as to justify him in purchasing, upon the ground that the contract was void; and that it is unnecessary to resubmit the issues to a jury. The decree of the District Court will, therefore, be set aside, and a *procedendo* issue, requiring a decree in accordance with this opinion.