FRANK <i>v.</i> PURINGTON.

Where in an action for the specific performance of a written contract for the sale and conveyance of real estate, it appeared that the contract was dated October 2, 1848, by which complainant was to pay eight hundred dollars for the land, sixty-five dollars of which was paid in hand, and five promissory notes given for the unpaid purchase money, payable in annual instalments, on the first of March in each year, the last note falling due on March 8, 1853, and which provided, "that if, whenever the said D. F. shall have fully performed his part of the above named conditions, I shall make him a good and sufficient warranty deed of the above described land, then this bond is to be void—

otherwise in full force and effect;" that forty-two dollars and eighty-five cents were paid in 1849, and credited on the note due March 1, of that year; that the complainant took possession of the land in 1849, and has continued in possession ever since; that there was on the land at the time, a log cabin, with a clap-board roof, and without any floor in it—some twenty or thirty acres "broke"—and about one hundred rails in a fence around a hay-stack; that after taking possession, complainant removed the log cabin to the east side of the creek from where it stood, put on a shingle roof, and made a comfortable house of it; that he dug a well, thirty-eight feet deep, and walled it with brick—enclosed the garden with a sawed paling fence—broke up eighty acres of the land, and enclosed one hundred acres with a good stake-and-rider fence —built a kitchen, two corn-cribs, with a wagon-shed between them— and, also, a stable, blacksmith shop, and smoke-house, and other buildings; that these improvements, in 1854, were worth from one thousand five hundred to two thousand dollars; that complainant had raised six crops on the land; that one J. F. told respondent, that he was trying to persuade complainant to sell half of the land, in order to pay respondent, when the latter said he would not persuade him to do so—that he was not in need of his money, as it was drawing interest; that in February, 1853, before the last note became due, the respondent was at complainant's house, when the latter said he would sell his breaking team and some other stock, in order to raise money to pay respondent; that respondent replied, that he had better not sell them, as he and his sons could earn considerable money with them during the season—that he did not want the money, and could not use it at that time—that the payments became due on the first of March, but he had agreed to wait longer with complainant, and still intended to do so; that at another time respondent asked complainant, provided he (respondent) wanted money, how long notice would complainant require, and complainant replied, that, with notice, he could raise it in ten days, or two weeks; that about the time the last note became due, the respondent was at the house of complainant, when the latter told him, that he would raise the money for him, and pay him, and then he would expect a deed; that respondent asked, "you want a deed, do you?"—complainant replied, that he did, when he paid the money, when respondent said, "he did not intend to make him a deed," or that "he never intended to make a deed;" that on the 6th of March, 1854, the respondent notified the complainant, that he rescinded the contract—demanded possession of the land—and tendered to him the money paid on the contract, with interest, and his notes for the unpaid purchase money, which complainant refused to receive; that upon that occasion complainant told respondent, that "the case might have been all saved—if respondent would have taken the money, he would have raised it for him," to which respondent replied, "I tell you again, I don't want your money, and never did;" and that in the fall of 1852, a witness told respondent, that the complainant was going to try and raise the money to pay him,

to which he replied, that he did not want the money, but the land—that he had been disappointed in getting money; *Held*, That the complainant was entitled to a specific performance of the contract.

## Appeal from the Muscatine District Court.

### FRIDAY, DECEMBER 11.

Bill in chancery, praying a decree for the specific performance of an agreement to convey certain real estate, and for an injunction to stay proceedings at law, in an action, commenced by defendant, to recover possession. By the terms of the contract, dated October 2, 1848, complainant was to pay $800 for the land, of which $65 was paid in hand, and five promissory notes given for the unpaid purchase money, payable in annual instalments, on the 1st of March in each year, the last note falling due on the 1st of March, 1853. It was further agreed by defendant: "That if, whenever the said David Frank shall have fully performed his part of the above named condition, I shall make him a good and sufficient warranty deed of the above described lands, then this bond is to be void, otherwise in full force and effect." Besides the $65, paid at the date of the contract, $42 85 was paid in the year 1849, and credited upon the note due March 1st, of that year. This was all the money paid by complainant. On the 6th of March, 1854, defendant notified the complainant, that he rescinded the contract, demanded possession of the land, and tendered to complainant the money paid by him on the contract, with interest, and his notes for the unpaid purchase money, which complainant refused to receive.

In May, 1854, defendant commenced his action to recover back possession of the land. On the 22d of the same month, complainant commenced the present action, tendering the purchase money unpaid, and interest, and paying the same into court, and praying a decree for the specific performance of the contract. The defendant answered, resisting the relief prayed for; and upon final hearing, the court rendered a decree in favor of complain-

ant, for the conveyance of the land, and perpetuating the injunction against the proceedings at law. From this decree, defendant appeals.

*James Grant*, for the appellant, cited the following authorities: *Benedict* v. *Lynch*, 1 Johns., 377; *Alley* v. *Deschamps*, 13 Vesey, 224; *Hatch* v. *Cobb*, 4 Johns., 359; *Jackson* v. *Ligon*, 3 Leigh., 161; *Higby* v. *Whittaker*, 8 Ohio, 198; *Dominick* v. *Michael*, 4 Sandf. S. C., 426.

*Henry O'Connor* and *Richman & Brother*, for the appellee, relied upon the following: *Lawrence* v. *Dale*, 3 Johns. Ch. 23; *Shaw* v. *Livermore*, 2 Greene, 339; *Brink* v. *Morton*, 2 Iowa, 411; *Wright* v. *LeClaire*, 3 Ib. 221; *Edgarton* v. *Peckham*, 11 Paige, 352; *Brown* v. *Haff*, 5 Ib. 235; *Woodcock* v. *Bennett*, 1 Cow., 712: Code, Sec. 2094.

STOCKTON, J.*—The complainant asks to be relieved from the consequences of his default in making payment at the day the notes fell due, and bringing the money into court, for the use of the defendant, he prays a decree for a specific performance, on two grounds:

1. That by virtue of the purchase, he took possession of the lands in dispute, which, at the time, were to a great extent without improvement; and that he has made large improvements thereon, and has continued in possession of the premises up to the time of the commencement of this suit.

2. That defendant waived the default made by complainant, and extended the time for the payment of the purchase money due under the agreement.

The respondent denies that the improvements made by complainant, are worth more than the rent of the land;

---

*WOODWARD, J. having been of counsel, took no part in the decision of this cause.

and denies that he extended the time of the payment; and relies upon the fact, that he tendered back to complainant, the money paid by him, with interest, together with his notes, at the same time notifying him that the contract was rescinded and at an end, and demanding possession of the land.

It is shown by the testimony, that complainant took possession of the land in 1849, and has continued in possession ever since; that there was on the land at the time, a log cabin, with a clap-board roof, and without any floor in it, some twenty or thirty acres "broke," and about one hundred rails in a fence around a haystack; that the complainant after taking possession, removed the log cabin to the east side of the creek, from where it stood, put on a shingle roof, and made a comfortable house of it; that he also dug a well, thirty eight feet deep, and walled it with brick, enclosed the garden with a sawed paling fence, broke up eighty acres of the land, and enclosed one hundred acres with a good stake-and-rider fence, built a kitchen, two corn cribs, with a wagon shed between them, and a stable, blacksmith shop, smoke house, and other out buildings. These improvements are estimated, by one of the witnesses, to have cost $1500, and by another $2000. The witnesses were the sons of complainant, and the improvements are stated to have cost the above named sums, on the first of April, 1854. The complainant had raised six crops upon the land.

In regard to the extension of the time of payment, and the waiver of the complainants default in paying at the day, it was given in evidence, that Isaac Frank told defendant, that he was trying to persuade complainant to sell half the land, in order to pay defendant; that the latter said, he would not persuade him to do so; that he was not in need of his money, as it was drawing interest; that in February, 1853, before the last note was due, the defendant was at complainant's house, and complainant said he would sell his "breaking team" and some other stock, in order to raise money to pay him; that defendant

told him, he had better not sell them, as he and his sons could earn considerable money with them, during the season; that he did not want the money, and could not use it at that time; and that the payments became due on the first of March, but he had agreed to wait longer with complainant, and still intended to do so. The witnesses did not know what time he had agreed to wait; one of them said, it was another month. At another time, defendant asked plaintiff, "provided he (defendant) wanted money, how long notice would he (plaintiff) require?" Plaintiff replied that, with notice, he could raise it in ten days or two weeks. About the time the last note was due, defendant was at complainant's house, and complainant told him, that he would raise the money for him and pay him, and then he would expect a deed. Defendant said, "you want a deed, do you?" Plaintiff replied, that he did, when he paid the money. Defendant then said: "He did not intend to make him a deed," or that, "he never intended to make a deed." Witnesses could not be positive which expression was used; one of them thought it was the latter expression. At the time that defendant came to notify complainant, to give up possession of the land, complainant told defendant, that "the case might have been all saved; if defendant would have taken the money, he would have raised it for him." Defendant replied, "I tell you again, I don't want your money, and never did."

This is the substance of the testimony given by Isaac and Joseph Frank, the sons of the complainant. William Saunders, another witness, testifies that in the fall of the year 1852, he told the defendant, that the complainant was going to try and raise the money to pay him. Defendant said he did not want the money, but wanted the land—that he had been disappointed in getting the money.

Looking at all these circumstances, as they are disclosed in the record, and at complainant's equitable claims to relief, based upon them, it is our conclusion, that, although complainant appears to have been guilty of gross neglect,

in not making payment according to his agreement, yet his negligence has been reasonably explained, and shown to be consistent with fairness and good faith.

1. The defendant dissuaded complainant from selling part of his land, and from selling his stock, to raise money to pay him, and informed complainant that he did not want his money, as it was drawing interest, and he could not use it, if it was paid to him.

2. He postponed the day of payment, and virtually agreed with complainant, that he would give him notice of the time when he wanted his money.

3. Complainant was authorized to infer, from the language and conduct of defendant, that he would not receive the money, if it was offered to him; and, although this fact would not dispense with the necessity of tender or payment, before complainant could require a deed of conveyance, yet, it is sufficient to show that he was not acting in bad faith in delaying payment, or in not offering, on his part, to perform, from March, 1853, to May, 1854.

4. The evidence goes very far to justify the conclusion, that defendant encouraged the negligence and delay of complainant, in paying the purchase money, with the design of taking advantage of his default, in order to forfeit and rescind the contract. The language, " I don't want your money, and never did," and " I never intended to make you a deed," would seem to indicate such an intention.

The defendant relies upon his notice to complainant, March 6th, 1854, and his tender back of the purchase money paid, with the unpaid notes, as putting an end to the contract, and precluding any right of complainant to ask a decree for its specific performance. We do not think complainant's rights are concluded by such notice and tender. We place in opposition to them, the fact that defendant had waived the default, and extended the time of payment; and, by his language and conduct, given complainant reason to believe that he would not receive the money, if it was offered to him. These, and the additional facts, that complainant had taken possession of the land,

with the knowledge and consent of defendant; that he had, in good faith, before default, made permanent and valuable improvements thereon; and that he still retains possession of the premises, and has shown no disposition to abandon the contract—these, in our view of the subject, amount to the " equitable circumstances," which serve to excuse, what might otherwise be considered the *gross laches* of complainant; they account for the length of time he has suffered to elapse before filing his bill for relief, and show, to our mind, conclusively, that the contract was in full force at the time the tender was made by complainant, and that he is entitled to a decree for its specific performance. See *Griffith* v. *Depew*, 3 A. K. Mar., 177; *Remington* v. *Kelly*, 6 and 7 Ohio, 447; *Brink* v. *Morton*, 2 Iowa, 411; *Armstrong* v. *Pierson*, *ante*, 317.

Decree affirmed.