GEORGE M. FILKINS, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

A blow given with the handle of a pitchfork, without pushing or thrusting with the tines, is not an assault with a "sharp, dangerous weapon," within the meaning of the act of 1854 (chap. 74, Laws of 1854), providing for the punishment of assaults with dangerous weapons.

Upon the trial of an indictment under said act, evidence on the part of the defendant, that the assault was committed in defending his property, or that of others entrusted to his care, against a trespasser seeking to take forcible possession, is competent, both upon the question as to whether to the extent that force may lawfully be used in the defence of one's goods the assault was justified, and also upon the question whether the assault was "with intent to do bodily harm." If the intention was merely to defend the possession, although unjustifiable means may have been resorted to, the offence is not within the statute.

The presumption that a party intends the ordinary and probable consequences of his acts is not conclusive, but may be rebutted by competent evidence.

(Argued February 21, 1877; decided March 20, 1877.)

ERROR to the General Term of the Superior Court of Buffalo to review judgment affirming judgment of a criminal term of said court, entered upon a verdict convicting plaintiff in error of a felonious assault, under the act chapter 74, Laws of 1854.

The facts are sufficiently stated in the opinion.

*Albert P. Lanning*, for the plaintiff in error. The prisoner had a right to use sufficient force to protect his property. (*Parsons* v. *Brown*, 15 Barb., 590.) The degree of force used and the amount of resistance necessary was a question for the jury. (*Harrington* v. *People*, 6 Barb., 607; *Corley* v. *People*, 45 id., 262; *Sage* v. *Herpending*, 49 id., 166, 175; *Hardenburg* v. *Crary*, 50 id., 50; *Gyre* v. *Culver*, 47 id., 592.)

*D. N. Lockwood*, district attorney, for the defendants in error. The prisoner had no right to assault Taylor with a dangerous weapon, although he was a trespasser. (*People* v. *Sullivan*, 7 N. Y., 396; 4 Black. Com., 180.)

ALLEN, J. The plaintiff in error was convicted in the Superior Court, of the city of Buffalo, of a felonious assault upon one Taylor with "a pitchfork, a sharp, dangerous weapon," without justifiable or excusable cause, and with intent to do bodily harm to said Taylor. The offence for which he was indicted was created by chapter 74 of the Laws of 1854, and a conviction can only be had upon proof of the concurrence of the several facts of which the crime is made to consist. (1.) An assault; (2.) The absence of any justifiable or excusable cause for the assault; (3.) That the assault was with a "knife, dirk, dagger or other sharp, dangerous weapon; and, (4) that it was made "with intent to do bodily harm." Any evidence that goes to disprove any one of the facts which enter into and make a part of the statutory crime is competent and should be admitted. Under an indictment for the aggravated assault and battery,

which is made a felony by the statute, the party indicted may, upon proof of "justifiable or excusable cause," be acquitted altogether, or if a legal justification for the use of moderate and reasonable force is shown, but excessive violence has been done, he may be convicted of an assault and battery by reason of the excessive force; or if the assault be proved and there be no justification, but the intent to do bodily harm is negatived, or the weapon is not one of those named in the statute, the offence will be reduced to a misdemeanor — a simple assault and battery. Any evidence legitimately tending to justify or excuse the assault, or to show that it was not made with the particular malicious intent charged, was competent, as the question of fact upon either defence would have been for the jury.

It appeared upon the trial that a controversy existed between the accused and one Carpenter in respect to some fifty mules, the latter claiming a lien upon them for their keeping, and the former claiming them in right of, and as the agent or bailee of his wife, the general owner.

At the time of the alleged assault they were in a barn owned by one Rogers, and in that half of it which there was evidence to prove had been rented by Filkins, and although Carpenter testified that he had, in his own name, rented one-half of the barn from the owner, there can be but little doubt that Filkins was the tenant in possession of the premises, and thus in actual possession of the mules.

There was also evidence that the mules had been kept by Carpenter, under some agreement with Filkins, and that there were several hundred dollars due and in arrears for their keeping. Upon the occasion of the affray, during which the alleged assault was made upon Taylor, Carpenter had, in the absence of Filkins, gone to the barn with a number of men and boys, including Taylor, prepared and intending to take possession of and remove the mules by force and with a strong hand. He was accompanied by several members of the police force of the city of Buffalo, in and out of uniform, who, it would seem from their actions,

were present, not as conservators of the peace, but in the interest of Carpenter, and to arrest any that might interfere with or hinder him in getting possession of the mules.

The attempt of Carpenter, and those aiding and assisting him, tended to a breach of the peace, and led naturally and directly to the affray which ensued, and in which, if Filkins had the legal right to the possession of the mules, they were the aggressors.

On the coming of Filkins upon the ground, and discovering what was being done by a multitude, and with force, he opposed force to force to retain the property, and the assault upon Taylor was the result.

He (Filkins) saw that several of the mules had been taken out of the barn and were being led away, and sought to prevent the removal of the residue, but with the aid of a single man, and against the force opposed to him, was unable to close the barn. He found Taylor in the act of taking one of the mules from the stall, and with a pitchfork which he had in his hand struck him twice on or over the head.

The assault was by a blow, as with a stick or club, and not by pushing or thrusting with the tines.

As used, the weapon was no more dangerous than it would have been if there had been buttons on the tines to prevent their puncturing the flesh, or than would have been a knife held by the blade, the holder striking with the handle.

A blow thus given with the handle of a knife would not be an assault with a knife or sharp instrument, within the statute, any more than would an attempt to discharge a loaded gun, the touch-hole of which was plugged, be an offense under the English statute making it criminal to attempt to discharge a loaded gun at another. (*Rex* v. *Harris*, 5 C. & P., 159; 1 Russ. on Cr., 979; marg., 725.)

In the progress of the trial the accused proposed to prove the ownership and possession of the mules, and that he was justified in using force to retain them. The evidence was excluded, the judge ruling that it was not material whether the accused had possession of the animals, or whether rea-

sonably or unreasonably, justifiably or unjustifiably, Carpenter obtained possession of them. Again, when it was proposed to prove that Carpenter and his men were trespassing, and that the accused was only endeavoring to protect his property, the court declined to go into the question of the right between Carpenter and Filkins. At a still later stage of the trial, the judge was asked if he still persisted in his ruling out evidence of the ownership of the property, to show a right to resist, and a justification in the use of force, he replied that he did persist in so ruling.

To each of these rulings and decisions there was a distinct and several exception.

In the exclusion of this evidence by the learned court, we think there was manifest error. The right of property and to the possession of the mules was at the foundation of a justification or excuse for any assault, or the resort to any violence or force to prevent their removal. The jury might, had the proof been admitted, and the facts offered to be proved been conclusively established, have convicted the prisoner of an assault and battery in the use of excessive force, or of the felonious assault charged as having been made with the specific intent to do bodily harm, but the weight and effect of the evidence would have been for the jury.

The evidence having been excluded, the accused was without excuse for resistance, and the jury were permitted to infer such intent as the character of the assault without proof of any justifiable or excusable cause authorized. If the possession of the mules by Filkins was rightful, either as owner or as the bailee of the owner, and Carpenter was not entitled to the possession in virtue of any lien, then Taylor as a volunteer in aid of Carpenter and others acting with him was a trespasser, and Filkins could have justified an assault and battery in' defense of his possession. Carpenter and his abettors, if without right to the mules, having come forcibly upon the premises to remove the goods of Filkins, the latter could have opposed them with force at once and

without a previous request to desist. There was no time to make a request. (*Green* v. *Goddard*, 2 Salk., 641 ; *Tullay* v. *Reed*, 1 C. & P., 296; *Weaver* v. *Bush*, 8 T. R., 78.)

. It is not disputed that a man may justify an assault and battery in defence of his lands or goods, or the goods of another delivered to him to be kept, and whether he resist with greater force than is necessary or than is proportioned to the violence of the trespasser, will be for the jury under proper instructions from the court. (Hawk. P. & C., b. 1, c. 60, § 23; 1 Russ on Cr., 609 [*n.*].) The assault upon Taylor by the plaintiff in error was professedly in defence of property to which he asserted title, and the affray grew out of the rival claims of the contestants, and the proof offered was competent to enable the jury to determine who was the aggressor, and whether, to the extent that force might lawfully be used in defence of one's goods, the assault was justified.

The evidence was also competent upon the question of the intent with which the assault was made. The *quo animo* of the attack was material as fixing the grade of the offence. To convict the accused of the aggravated offence created by the statutes of 1854, the act must have been committed by him with the specific, malicious intention, which, under the statute, gives character to the act and aggravates the assault. The intent in such cases is a question of fact for the jury, and the malicious intention is to be inferred from the situation of the parties ; their acts and declarations ; the nature and extent of the violence and the object to be accomplished. If the intention was merely to defend the possession of the goods, and there was no malicious intent, although unjustifiable means may have been resorted to, the offence was not within the statute of 1854. Whenever the degree of the offence depends upon the particular intent with which an act is done, the intent to be inferred from the circumstances is for the jury, and every fact which will throw light upon that question may be given in evidence.

It is only a presumption that a party intends the ordinary

and probable consequences of his act, and such presumption may be rebutted by competent evidence. (2 Stark. Cr., 691; *Sinclair's Case*, 2 Lew., 49; *Griffin* v. *Parsons*, 1 Rus. on Cr., 755 [*g.*]; *William's Case*, 1 Leach, 533; 1 East P. C., 424.) With full proof of legal right in Filkins, as offered, with proof also offered in the same connection and rejected, that the accused was only endeavoring to protect his property, the jury might have negatived the felonious intent charged, or either acquitted him or convicted him of a simple assault and battery, finding that, although bodily harm might have resulted from the assault, it was not made with that intent or to accomplish that object, but with the lawful intent merely of defending his property. Direct proof of the actual intent was substantially included in the offer, and was admissible. (*Kerrains* v. *People*, 60 N. Y., 221.)

The judgment must be reversed, and proceedings remitted for a new trial in the Superior Court of Buffalo.

All concur.

Judgment reversed.