[No. 3555.]

### Willis Southier v. The State.

1. Assault and Battery, as defined by the Penal Code, article 484, does not consist of every violent act against another, but only of "any unlawful violence upon the person of another, with intent to injure him," etc. Reasonable force exerted for the purpose of preventing injury or destruction of one's own property is not an assault.

2. Same — Charge of the Court — Case Stated. — While the carriage of the defendant was standing in the street in front of a hotel, an omnibus was driven up and was backing down upon the carriage when the defendant told the driver of the omnibus not to back against his carriage or he would hit him with a rock; but the driver of the omnibus disregarded the warning and continued to back his omnibus until it either struck or was about to strike the carriage, which, being the lighter vehicle, was liable to be crushed and injured by the impact of the omnibus. While the omnibus was thus being backed against his carriage, or just as they were thus brought in collision, the defendant struck the driver with a stone. The trial court did not instruct the jury upon the law justifying force in defense of property, and the defense not only excepted to the charge of the court for this omission, but asked an instruction sufficient to call the attention of the court to the omission; which special instruction was overruled and disregarded. *Held*, that there was error in the charge of the court, and in the refusal to instruct the jury upon the law applicable to the case as made by the evidence.

Appeal from the County Court of Johnson. Tried below before the Hon. B. D. Simpson, County Judge.

Under an information charging him with an aggravated assault and battery upon the person of James Ferris, in Johnson county, Texas, on the 1st day of January, 1885, the appellant was convicted of simple assault, and his punishment was affixed at a fine of $5.

James Ferris, the alleged injured party, was the first witness for the State. He testified that, early on the morning of January 1, 1885, he drove his 'bus to the Cleburne House to receive passengers to the depot. Just as he was making ready to back his 'bus to the sidewalk, he heard the defendant say: "Back up against my carriage if you want to." Witness did not stop backing, but presently received a blow just above the ear. Witness did not know who struck him, nor with what kind of missile or instrument he was struck; in fact, he was knocked senseless for some time. Witness was told that he drove the 'bus to the depot and back again after being struck, and that, during that time, he made efforts to fight the defendant, but he had no recollection of such facts, and merely remembered indistinctly that the defendant passed him once or twice. For some time after he was struck the witness was blinded, and could see nothing except at intervals, when his vision would momentarily return to him. Witness came to the Cleburne House on that morning from a northern direction, and, as he approached, saw the defendant's carriage in front of the hotel at the front sidewalk. Witness knew that defendant's carriage was standing there when he backed his 'bus, but it was standing in the place usually occupied by the witness's 'bus to receive passengers. He had never seen the defendant's carriage at that place before. Mr. Brown, the proprietor of the hotel, had previously requested the witness to occupy that place with his 'bus when calling for passengers. There was ample room north of the carriage to back up to the sidewalk.

James Shaw was the next witness for the State. He testified that he was present in front of the Cleburne House on the morning of January 1, 1885, and saw the difficulty between Ferris and the defendant. The two parties were disputing when witness arrived. The defendant told Ferris not to back his 'bus against his carriage on pain of being knocked down with a rock. Ferris replied that if defendant did not move his carriage from the place it occupied, he would drive his 'bus against it. Ferris then started to back his 'bus towards the carriage, when the defendant struck him with a stone, and knocked him slightly over to one side, but not off his seat. Witness noticed, when he first arrived, that the defendant had the stone in his hand. It was a flat stone about the size of a man's two hands placed together. Being shown a stone, the witness stated that he did not think it was the one used by the defendant, though it somewhat resembled that stone in shape. Witness picked up the stone used by defendant in the difficulty and gave it to Jo Churchwell. Defendant's carriage, at the time of the difficulty, stood broad-

side in front of the hotel pavement. The 'bus was a large, heavy, two-horse vehicle, while the carriage was a very light vehicle in comparison. The 'bus could easily have demolished the carriage.

James Clark was the next witness for the State. He testified that he owned the 'bus driven by Ferris, and rode in it from the stable to the hotel on the morning of the difficulty. Before the 'bus turned to back up to the front of the hotel door the witness got out and went into the hotel. Just as he returned he saw Ferris knocked over to one side, but did not see with what he was struck. He was not knocked from his seat. Witness saw the defendant step up to the side of the 'bus with a stone in his hand, but did not see him throw or attempt to throw it. The 'bus and carriage and the defendant and Ferris were all in the public street at the time, the carriage standing broadside, north and south, in front of the hotel sidewalk, and the 'bus east and west, with its rear towards and against the carriage. Witness told Ferris to drive the 'bus up and back to the sidewalk north of the carriage, which Ferris did. Ferris drove the 'bus to the depot and back after he was struck. He looked a little strange or dazed during that drive. Defendant would weigh perhaps one hundred and sixty pounds, and was a man of considerable strength, though a little lame.

S. H. Wilson testified, for the State, that on passing in front of the Cleburne House on the morning of January 1, 1885, he noticed the defendant's carriage standing broadside in front of the hotel sidewalk. Ferris drove up with his 'bus about that time, and just after witness got by he heard defendant tell Ferris that if he backed his 'bus against his carriage he would knock him off his seat. Witness looked back and saw Ferris take a shorter hold on his lines, about which time he was struck in the head with a stone, and knocked over sideways, but not off the 'bus. One of the 'bus wheels, the witness thought, was then against one of the hind wheels of the carriage. The 'bus was standing still, and witness could not say whether it was Ferris's intention to move forwards or backwards when he shortened his hold on his lines. The 'bus was a much larger and heavier vehicle than the carriage.

Jo Churchwell, for the State, identified the stone in evidence as the one given him by the witness Shaw as the stone with which defendant struck Ferris.

John Souther was the one witness introduced by the defense. He testified that he was a brother to the defendant, and was in his employ. He drove the carriage to the hotel on the morning of the difficulty. On his arrival at the hotel, and after stopping the car-

riage broadside in front of the hotel, at the place previously assigned him by the proprietor of the hotel, witness went into the hotel, leaving his brother, the defendant, to watch the carriage and team. He did not see the difficulty, but when he returned he saw that one and perhaps both of the hind wheels of the 'bus were against the hind wheels of the carriage, and had pressed the wheels of the carriage some six or eight inches from their original position into contact with the sidewalk. Any additional pressure would inevitably have demolished the carriage. Ferris, on being directed by Mr. Clark, the owner of the 'bus, drove that vehicle forward, and backed it to the sidewalk at a point north of the carriage. The carriage was not injured.

The motion for new trial raised the questions discussed in the opinion.

*Davis & Plummer*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Ferris, the party who was assaulted, testified in substance that defendant's carriage was in front of the hotel when he came up with his omnibus; that there was enough room for him to back his 'bus up to the front of the hotel without backing against defendant's carriage; that when defendant, in effect, told him not to back against his carriage he did not stop. The other evidence showed that the carriage could easily have been crushed by the 'bus's being forced back against it, and that the wheels of the 'bus were against the carriage when defendant struck Ferris with the rock.

The charge of the court was excepted to and special instructions were requested for defendant, and were refused. The court did not charge the law with reference to the right of a party to defend his property against an act of violence offered to it. Violence does not amount to an assault when committed in defense of one's property against the unlawful violence of another offered towards said property (Penal Code, art. 490, subdivision 6); and where force is used to prevent such violence it is for the jury to say whether it was necessary to effect the purpose (Penal Code, art. 491), or whether it was in excess of or disproportioned to the aggravation and impending danger to the property. If the intention of the defendant was only to protect and defend his property against threatened and impending violence, then, although unjustifiable means might have been resorted to, it was still a question for the jury to decide as to

whether under all the circumstances the violence used was with intent to injure the party or for the purpose of protecting his property.

If the violence used was not with intent alone to injure Ferris, but to prevent injury or destruction of his own property, then the violence would not amount to an assault in contemplation of law. (*Filkins* v. *The People*, 69 N. Y., 101.)

An assault and battery is the use of any unlawful violence upon the person of another *with intent to injure him.* (Penal Code, art. 484.) If the intent was to injure him in order to prevent him from injuring or destroying defendant's property, then defendant would not be guilty of an assault upon him, provided he only used such force as was necessary to effect such purpose.

The charge of the court did not present the law applicable to the facts, and in substance defendant's requested instruction, which was refused, was the law, though perhaps objectionable in phraseology. At all events, it called the attention of the court to the radical defects in the charge as given, and sufficiently so to require that it should be corrected; which was not done. As stated above, the charge as given was excepted to, and, because it was erroneous in that it did not submit the law applicable to the case, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]