(9 Misc. Rep. 441.)

## PEOPLE v. WIMAN.

(Supreme Court, Special Term, New York County.   July 12, 1894.)

**1. CRIMINAL LAW—CERTIFICATE OF REASONABLE DOUBT.**
On a trial for forging the name of the payee of a check, defendant claimed that he made the indorsement under a belief that he had a right to do so, and requested a charge that, "unless the jury find that the acts charged were committed with criminal intent, the defendant is entitled to an acquittal." The court refused to so charge, and stated that the jury must find that there was an "intent to defraud;" that the statute said nothing about "criminal intent." *Held* that, defendant having been convicted, a certificate of reasonable doubt (Code Cr. Proc. § 527) would be granted, because the jury may have been led to believe that an "intent to defraud" was the only question for determination, and that such intent was different from the "criminal intent" referred to in defendant's request to charge, and that a "criminal intent" was not requisite to guilt.

**2. SAME—INTENT.**
Criminal intent is a question for the jury, though the evidence thereof is clear and convincing.

At chambers.   Erastus Wiman was convicted of forgery, and now applies for a certificate of reasonable doubt under Code Cr. Proc. § 527, which provides that "an appeal to the supreme court from a judgment of conviction  *  *  *  stays the execution of the judgment  *  *  *  upon filing with the notice of appeal a certificate of the judge who presided at the trial, or of a judge of the supreme court, that in his opinion there is reasonable doubt whether the judgment should stand."   Granted.

J. D. Lindsay, for the People.

B. F. Tracy, for defendant.

BARRETT, J.   The defendant was indicted for forging the name of one Bullinger, as the indorser of a check for $5,000, made by R. G. Dun & Co., and payable to his (Bullinger's) order.   The question submitted to the jury was whether the defendant indorsed the name of Bullinger upon this check with intent to defraud Dun or his partners.   All questions as to whether the indorsement was made with intent to defraud Bullinger, or to defraud Wiman's own bank, were substantially excluded from the consideration of the jury.   This becomes apparent when we consider that the court charged the following propositions:

"First. That the deposit of the check by the defendant in the Central National Bank was not an uttering of the check with intent to defraud Bullinger, provided that the jury find that the defendant had reason to believe, and honestly did believe, that Bullinger could not be subjected to any pecuniary loss or injury by the use of his name.   Second. If the jury find that, at the time Wiman deposited the check with the Central National Bank, he had reason to believe, and did believe, that it would be paid by the Chemical Bank, as it was in fact paid by such bank, the act of depositing the check in the Central National Bank did not constitute an uttering of a forged check with intent to defraud the Central National Bank, within the meaning of section 521 of the Penal Code."

The premise of fact in each of these propositions was undisputed; that is, the defendant had good reason to believe, and undoubtedly did believe, that the check would be paid by the Chemical Bank in due course.   There was no question whatever in his mind, or as

matter of fact, with regard to the solvency of R. G. Dun & Co., or with regard to the satisfactory balance to their credit in the Chemical Bank. For the same reason the defendant was also justified in the belief that Bullinger could not be subjected to pecuniary loss, and that the Central National Bank would not have to look to him as indorser upon the check. Thus the case was put to the jury upon the single question which pervaded the trial, namely, the intent to defraud R. G. Dun & Co. Unless, therefore, the unauthorized indorsement of the check was made with intent to defraud R. G. Dun & Co., the defendant—as, indeed, the court repeatedly charged—was entitled to an acquittal. It was essential to show, not only that the drawing of the check was with intent to defraud the firm, but that the act of indorsing Bullinger's name thereon was with that intent. The defendant was in fact authorized to draw firm checks, and an abuse of that authority, even if otherwise criminal, could not constitute forgery. It might well be a fraud upon the firm, but such fraud would not of itself create the crime of forgery. To constitute forgery the fraud must be applicable, not solely to the drawing of the check, but to the unauthorized indorsement. The criminal intent must have relation to the latter, not merely to the former. For example, if, after making the check, with the fraudulent purpose of thereby effecting a misappropriation of Dun & Co.'s moneys, the defendant had secured what he had a right to believe was Bullinger's authority to indorse it, it would not have been forgery, although such authority was not in fact given; as, for instance, if the defendant had sent a confidential agent to request such authority, and such agent had falsely reported that it had been obtained. There, if the facts justified an honest belief that the authority had been given, it would not be forgery, though such authority were really wanting. Why? Because of the absence of criminal intent with regard to the signature. Under such circumstances the criminal intent to misappropriate Dun & Co.'s moneys would not suffice to constitute forgery of the indorsement. It would seem to follow that the intent with which the indorsement was made was a relevant issue, and that the defendant could only be convicted in case the jury were satisfied of the defendant's criminal intent in that regard. There were thus two issues: First. Was the writing of Bullinger's name upon the back of the check, though unauthorized by Bullinger, under all the circumstances, criminal? Second. Was such writing, if criminal, made with intent to defraud R. G. Dun & Co.? The court recognized the relevancy and importance of this first issue. This proposition was distinctly charged:

"If the jury shall find that Wiman believed that, under the rules of law applicable to commercial paper, he had legal authority to use the name of a person as payee to whom it was not intended that the check should be paid, and to indorse such name on the back of the check, such indorsement is not forgery."

This proposition was charged after the case had been summed up, and after the learned judge had concluded his colloquial charge, yet the learned judge declined to permit the defendant's counsel, in his summing up, to discuss the facts and circumstances upon which

the proposition was predicated. At this point in his argument, counsel was interrupted by the court, whereupon he stated that the argument with regard to which the interruption occurred was for the purpose of leading up to a proposition, which he called his second proposition, and which he intended to ask the court to charge. He then specified this second proposition, which was in these words:

"I shall ask your honor to charge the jury that if the defendant believed that, under the rules of commercial law, he had legal authority to make this check and indorse it as he did, the crime is not forgery."

The court then observed, "That I shall refuse," and counsel excepted. The learned counsel then proceeded as follows:

"Then, gentlemen, if his honor goes to that length, it does render this discussion on my part unnecessary, because I was laying down what I believed to be the general rule of commercial law, which was understood to prevail in all commercial circles, for the purpose of establishing the second proposition,—that whether Mr. Wiman was right or wrong in that, as a legal proposition, still, if he believed he was right, and made his indorsement in the belief of his legal authority so to do, then there was no criminal intent, and he could not be convicted of forgery. Now, I understand his honor to say that he will not charge this proposition, and therefore I pass to the next proposition."

It is apparent that the learned judge ultimately receded from the position thus taken. This, however, was but a moment before the retirement of the jury, and was not accompanied by a distinct withdrawal of the ruling made during the summing up, nor by a suggestion that the case might be reopened, and counsel permitted to resume his address at the point where he was checked. The propositions differed slightly in form, but not at all in substance. There was no doubt, upon the evidence, that the defendant never intended to deliver or pay the check to Bullinger. What he intended was, by the use of such a check, to conceal temporarily from his partners the fact of his overdraft. In the one proposition, the words used were, "legal authority to indorse it as he did." But what is that, save legal authority to indorse the name of a person to whom it was not intended that the check should be paid, as expressed in the other proposition? There was no authority, as matter of fact, to sign Bullinger's name. Whether there was a criminal intent in so signing depended upon the belief embraced within each of the two propositions. If the learned judge was right in his latest expression of opinion, then there would seem to be at least a reasonable doubt as to the correctness of the position taken upon the summing up. If, however, he was right in his original position, then there would seem to be an equally reasonable doubt as to whether the jury may not have been confused by the subsequent charge, and left in uncertainty as to the rule which should guide them in the consideration of this branch of the case. This doubt is accentuated by the fact that notwithstanding the final charge as to the effect of Wiman's belief, etc., the learned judge explicitly withdrew the question of criminal intent from the jury. This latter ruling is also the subject of an independent assignment of error. The record shows that the ruling on this head was advisedly made. After the incident already referred to, counsel for the defendant proceeded as follows:

"If I am to argue this question on the assumption that he (Wiman) had no legal right to do that (that is, to indorse the check as he did), that no belief on his part that he had a legal right to do it protects him, then there remains for me only one or two other questions,—that of criminal intent, and that of intent to defraud. May I ask your honor, at this stage, how you will charge on the subject of criminal intent?"

To this inquiry the court responded as follows:

"Intent to defraud, the statute says. I shall charge that the jury must find that there was intent to defraud; nothing about criminal intent,—intent to defraud; to take some property that did not belong to him."

This was subsequently emphasized when counsel for the defendant requested the court to charge, in terms, that, "unless the jury find that the acts charged were committed with criminal intent, the defendant is entitled to an acquittal." To this request the court responded in these words:

"I charge you, unless the act was committed with intent to defraud, as I explained it to you, the defendant is entitled to an acquittal. I refuse to charge as requested."

This refusal is complained of in a double aspect. In the first place, it entirely withdrew from the consideration of the jury the question as to whether the signature of Bullinger was written with a criminal intent. Thus, it was consistent with the ruling which was made during the summing up, and it was seemingly inconsistent with the subsequent charge as to the effect of Wiman's belief, for what he believed was material only upon the question of criminal intent. If that belief bore legitimately upon his guilt or innocence, it was because it bore upon his intent. When, therefore, the court refused to charge that the defendant was entitled to an acquittal unless his acts were committed with criminal intent, it attributed criminality, as matter of law, to the unauthorized act of signing Bullinger's name. It was equivalent to saying that, so far as the signature was concerned, the jury could consider nothing save the fact that it was made by Wiman without Bullinger's authority. But it will be scarcely be denied that the jury should also have considered the surrounding circumstances. Indeed, according to the view of the learned judge at the close of the case, they should also have considered Wiman's belief as to his right to use the name of the payee at the time, under the circumstances, and in the manner he did. Wiman testified that, when he indorsed Bullinger's name on the back of the check, he had no intention of defrauding anybody; that he had no intention of defrauding Dun & Co., at that time, by that act; that he used Bullinger's name as payee of the check so as not to appear to draw directly in his own name, and because he did not want to make his account in the office appear large. No matter what we may think of this testimony, no matter how clear the criminal intent may appear from all the facts,—nay, from even undisputed facts,—still the question was for the jury. In the second place, the question of criminal intent was treated as something above and beyond the statutory intent to defraud, which additional something was not essential to the finding of guilt. In this connection it will be observed that, while refusing to charge as requested with regard to criminal intent, the learned judge did charge

that unless the act was committed with intend to defraud, as already explained to the jury, the defendant was entitled to an acquittal. The difficulty here was twofold: First. The intent to defraud, which had previously been explained to the jury, had no relation to the mere act of signing; that is, to the independent intent with which Wiman used the name of the payee. The explanation related solely to the fraud committed upon Dun & Co. by the transfer of moneys from their bank to that of the defendant. Second. Even with regard to the latter fact, it distinguished between an intent to defraud and a criminal intent. The learned judge did not refuse to charge as requested, because the intent to defraud, under his definition, amounted to criminal intent. That they were not understood to be synonymous was plainly indicated. He charged the necessity of finding an intent to defraud, and in the same connection explicitly refused to charge the necessity of finding a criminal intent. This was evidently because he deemed the latter unnecessary and the former alone crucial; for, as we have seen, he had previously made the same distinction in his observations to counsel: "Intent to defraud, the statute says; nothing about criminal intent." It may be said that the statutory "intent to defraud" is the criminal intent requisite to sustain a conviction. If this be so, it should have been applied to the act of signing as well as to the object to be attained; and the jury should have been informed that the proposition as to criminal intent was covered by the charge as to the intent to defraud, and was therefore refused only because it was repetitious. In place of this, the jury was led to believe that the intent to defraud, as explained to them, was the only question for their determination; that that intent was something different from the criminal intent which the counsel for the defendant had embraced within his proposition; and that such criminal intent was not a prerequisite to guilt.

Again I feel constrained to say that, at all events, there seems to be at least a reasonable doubt as to whether the jury may not have been confused with regard to the question of criminal intent, and may not have been left in uncertainty upon that head. I need scarcely add that it is extremely well settled in this state that criminal intent is essential to a finding of guilt, and that, however clear and convincing the testimony may be on that head, it is still a question for the jury. People v. Flack, 125 N. Y. 324, 26 N. E. 267; People v. Powell, 63 N. Y. 88; Stokes v. People, 53 N. Y. 164; Duffy v. People, 26 N. Y. 593. In People v. Flack, supra, the court of appeals held (reversing a judgment of my own) that however clear the proof, and however incontrovertible the inference of a criminal intention, the question may never be ruled as one of law, but should always be submitted to the jury. This was a case of misdemeanor, while the present case is one of felony. It was also held that the presumption that a person intends the ordinary consequences of his acts is, as applied to criminal cases, not a presumption of law, but merely a rule to aid the jury in reaching a conclusion upon a question of fact; citing Filkins v. People, 69 N. Y. 101. In other words, the criminal intent is an essential ingredient in the indict-

ment, is traversable, and the defendant may testify as to his intent. Thus criminal intent is always a question of fact to be submitted to the jury.

There are other assignments of error which present interesting, if not serious, questions. It will not, however, be necessary to consider them, as, upon the two points which have been discussed, I deem it my duty to grant a certificate of reasonable doubt.