## CHICAGO, R. I. & P. RY. CO. v. MATUKAS.

No. 2644. Opinion Filed January 26, 1915.

Rehearing Denied April 27, 1915.

(147 Pac. 1038.)

1. **RAILROADS—Trespasser Ejected from Train—Petition—Sufficiency.** A petition which alleges that defendant's servants in charge of its trains passing through H. negligently permitted plaintiff and other boys to ride upon it; that, being accustomed so to do, on a certain day, while one of the defendant's freight trains was running through H., plaintiff was permitted to ride thereupon, and while so doing, and while the train was running about ten miles per hour, the fireman in vigorous language ordered him to get off; that the plaintiff was frightened thereby, and in his hurry to obey, without negligence on his part, fell and was caught under the wheels of the train and was injured; and that the same was the result of the negligence of defendant, its agents and servants—states a cause of action.

2. **SAME—Negligence—Question for Jury—Scope of Employment.** Where the evidence reasonably tends to prove that plaintiff, a boy aged nine years, boarded one of defendant's freight trains passing through H., and, while clinging to the ladder on the side of the car, was compelled by the fireman to jump off, which he did, and, while so doing, fell under the train and was injured, **held**, that the same was sufficient to take the case to the jury on the question of defendant's negligence. **Held,** further, that the fireman was acting within the scope of his employment in compelling plaintiff to get off the train.

3. **APPEAL AND ERROR—Negligence—Instructions——Pleading.** In an action in damages for personal injuries, where the petition alleges the injury to have occurred through the negligence of defendant, an instruction that plaintiff could not recover unless he proved a willful injury, and another that he could recover on proof of a negligent injury, is error.

(Syllabus by the Court.)

Kane, C. J., and Hardy, J., dissenting in part.

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by Peter Matukas, an infant, by Frances Matukas, his mother and next friend, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

C. O. *Blake,* H. B. *Lowe,* R. J. *Roberts,* W. H. *Moore,* and J. H. *Woods,* for plaintiff in error.

H. H. *Smith* and W. T. *Williams,* for defendant in error.

TURNER, J.   On December 31, 1909, in the district court of Pottawattomie county, Peter Matukas, an infant, by his mother as next friend, sued the Chicago, Rock Island & Pacific Railway Company, plaintiff in error, in damages for personal injuries.   After a general demurrer to the petition was filed and overruled, and issues joined by answer and reply, there was trial to a jury and judgment for plaintiff for $8,000, and defendant brings the case here.   It is first assigned that the court erred in overruling the demurrer to the petition.   The petition, after alleging the corporate existence of defendant, and plaintiff to be an infant about nine years of age, the death of his father, and that he sues by his mother, as his next friend, substantially states:

That prior to June 26, 1909, defendant's servants in charge of its trains passing through Hartshorne negligently permitted plaintiff and other boys about his age to ride thereupon; that, being accustomed so to do, on that day, while one of defendant's freight trains was running through Hartshorne, plaintiff was permitted and allowed to ride thereupon by defendant's agents and servants; that, while so riding upon a box car in said train about three cars in the rear of the engine, and while the train was running at the rate of 10 miles an hour, "* * * some one on said train ahead of this plaintiff whom this plaintiff at the time believed, and now believes, to have been the fireman, firing on the engine hauling said train, in strong and vigorous language ordered and directed this plaintiff to get off of said train; that this plaintiff was scared and frightened by the language and manner of the person giving said order, and in his hurry and effort to obey the said order, this plaintiff, in his effort to get from said train, * * * without fault or negligence on his part, fell and was caught under the wheels of said car and

train, and the cars, in passing over the plaintiff's foot," cut it off, and "internally injured this plaintiff;" that said injuries "* * * were caused by, and are the result of, and arose from the negligence and carelessness of the defendant, its said agents and servants, in permitting this plaintiff to ride upon defendant's said train, and in ordering and directing this plaintiff to get off of said car and train as hereinbefore alleged;" and "that it was the duty of the defendant, and its agents and servants in charge and control of its said trains, to exercise ordinary care in preventing this plaintiff and other infants of tender years from climbing upon and riding on said trans, and, when found thereon, to exercise a reasonable degree of care in removing said infants of tender years from its said train when found riding thereon without authority so as to avoid danger to said infants; that the defendant and its agents and servants knew that this plaintiff, Peter Matukas, was an infant of tender years, and that he could not and did not appreciate the danger and hazard to life and limb in attempting to and getting from said train while it was running at the rate of 10 miles an hour, as hereinbefore alleged, but that said defendant, and its said agents and servants, could and did appreciate the danger and hazard of any attempt of this plaintiff to get off of said train while it was running at such speed, and that the defendant, its said agents and servants failed to exercise ordinary care in removing said infant from its said train, and were guilty of negligence and carelessness in ordering this plaintiff to, and permitting him to attempt to, leave said train under the conditions and circumstances hereinbefore alleged;" that plaintiff "** * * is, by reason of said injuries caused and received by and through the negligence and carelessness of the defendant, and its agents and servants, as hereinbefore alleged," etc., damaged in a sum certain, for which he prayed judgment.

There can be no doubt as to the theory of the case as derived from said petition. In the langauge of counsel for plaintiff in his opening statement to the jury, it is:

" * * * It is the theory in this case. We think we can and will be able to substantiate by the proof what we allege in this petition, that the defendant was negligent

and careless in permitting these boys to ride on this train, and negligent and careless in directing this boy to leave this train while it was running at that rate of speed; and we think the law will be, after the court gives it to you, that if you find from this evidence, under the instructions of the court, that these facts are true, it will be your duty to find a verdict in favor of the plaintiff in this case."

The proposition of law stated by the pleader in his petition, and upon which he relies to recover, is that, where the presence of a child, at most a trespasser, is known to defendant, he is bound to exercise reasonable care in removing him from one of its trains while in motion. This is independent of another rule which is that one owes no duty to the ordinary trespasser except to refrain from intentionally injuring him. The proposition submitted by the pleader is sound, and, as stated in 21 Am. & Eng. Enc. Law, 474, is acquiesced in by even the strongest advocates of the rule that there is no duty to ordinary trespassers.

Lovett v. Salem, etc., R. Co., 9 Allen (Mass.) 557, was tort against a railroad company to recover damages for a personal injury sustained by the plaintiff, a boy of ten years, who was a trespasser upon the defendant's street car. Under instructions of the court the jury found, in effect:

"That, though he was wrongfully upon defendant's car, the driver ordered him to get off from it, intending thereby to make him leave it while in motion; that the plaintiff, by reason of being so ordered, left the car while it was in motion and was thereby injured; and that in getting off he used ordinary care."

The car was going in the same direction the boy was traveling, and he boarded it without any intention of paying his fare. In affirming the judgment for plaintiff the court said:

"In 1 Hilliard on Torts (2d Ed.) 160, the law applicable to this subject is stated as follows: 'The fact that a

plaintiff is a trespasser or violator of the law does not of itself discharge another from the observance of due and proper care towards him, or the duty of so exercising his own rights as not to injure the plaintiff unnecessarily. Neither will it necessarily preclude the plaintiff from a recovery against a party guilty of negligence.' The cases of *Norris v. Litchfield,* 35 N. H. 271, and *Kerwhacker v. Cleveland, etc., Railroad,* 3 Ohio (N. S.) 172, contain a full discussion of the doctrine, and a reference to the authorities. In *Barnes v. Ward,* 9 B. C. 420, it is said that a trespasser is liable to an action for the injury which he does, but he does not forfeit his right of action for an injury sustained by him. These doctrines must be regarded as reasonable, and the contrary doctrine unreasonable. If, for example, a person were to go on board of a ship just ready to set sail, it would be very unreasonable to hold that, because he was there without right and as a mere trespasser, the master might compel him to leave the ship by jumping into the sea several miles from the shore. It must be admitted that this is an extreme case, but on the same principle it would be unreasonable to hold that, when the driver of the defendant's car found the plaintiff riding upon the platform as a trespasser, he might compel him to leave while he was driving at such a rate as to make the act dangerous. The plaintiff was liable to an action for the trespass committed by him, and he was liable to be removed; but it was not necessary or reasonable that the right of removing him should be so exercised as to expose him to personal injury. For the negligence of the defendant's servant in this respect they are liable."

In *Biddle and Wife v. Hestonville, etc., R. Co.,* 112 Pa. 551, 4 Atl. 485, plaintiffs, as the parents of Clarence Biddle, about 12 years old, sued to recover damages for the death of their son through the alleged negligence of defendants. The syllabus reads:

"A street railway company, in ejecting a trespasser from a car, owes him such care as to avoid endangering his life and limb. It is therefore such negligence as will render the company liable for damages for their driver to compel a child to jump from the platform of a car in motion, even though he be a trespasser."

*Amato v. Sixth Ave. R. Co.,* 9 Misc. Rep. 4, 29 N. Y. Supp. 51, was a suit in damages by an infant through his guardian *ad litem* against the defendant for personal injuries. The record discloses that, in response to the call of a passenger, and intending to supply the latter with a paper, plaintiff, a newsboy, boarded one of defendant's cars, and, while selling the paper and standing on the front platform of the car, plaintiff was ordered off by the driver. Owing to the passing of a truck the lad begged to remain for a moment, but, heedless of the appeal, the driver pushed him off, and he fell under the car, sustaining injuries. In affirming the judgment for plaintiff the court said:

"We assume that in boarding the defendant's car, not intending to become a passenger, the plaintiff, for the time being, was a trespasser. That fact, however, did not lawfully expose him to ejectment by unusual means or excessive force, nor license the defendant or its servants unnecessarily to inflict upon him bodily injury *(Filkins v. People,* 69 N. Y. 101 [25 Am. Rep 143]; *Kiff v. Youmans,* 86 N. Y. 324 [40 Am. Rep. 543]; *Loomis v. Terry,* 17 Wend. 496 [31 Am. Dec. 306]); and whether or not the force used was excessive, or the means resorted to for the plaintiff's expulsion were unusually dangerous and menacing to life or limb, was, in view of all the circumstances, a question of fact for the jury (Cooley, Torts [2d Ed.] p. 194 *et seq.).* Defendant may lawfully prevent access by a trespasser to its cars; and, if access has been gained, it may lawfully expel the trespasser, using for that purpose only necessary force, in view of all the circumstances, and resorting to no means which unnecessarily menace the life or limb of the trespasser. It may lawfully delegate its authority in that regard to its servants, and *'qui facit per alium facit per se.'* Broom, Leg. Max. pp. 524, 525; Cooley, Torts (2d Ed.) p. 625 *et seq.* Authority from the defendant to its driver to expel trespassers is fairly to be implied from the employment. Wood, Mast. & S. p. 524 *et seq.* Hence, in ejecting the plaintiff from the car, the driver was acting within his employment, and the rule *respondeat superior* applies. To that effect are the ad-

judged cases. *Rounds v. Railroad Co.*, 64 N. Y. 129 [21 Am. Rep. 597]; *Hoffman v. Railroad Co.*, 87 N. Y. 25 [41 Am. Rep. 337]; *Clark v. Railroad Co.*, 40 Hun, 605, affirmed 113 N. Y. 670, 21 N. E. 1116; *Day v. Railroad Co.*, 12 Hun, 435, affirmed 76 N. Y. 593. The judgment and order should be affirmed, with costs."

In *Chicago, Milwaukee & St. Paul Ry. Co. v. Walter West,* 125 Ill. 320, 17 N. E. 788, 8 Am. St. Rep. 380, the engineer in charge of a switch engine on defendant's line of road invited a boy seven years of age, in violation of the rules of the company, to ride upon his engine. The boy was conceded to be a trespasser. In affirming a judgment for him against the company in damages for personal injuries, the court said:

"At the time of the accident plaintiff was about seven years old, and, of course, was too young to observe much, if any, care for his personal safety. It was the duty of the engineer to observe care, even if plaintiff was in the wrong in getting upon the engine. It was admitted by counsel at the trial: 'The engineer has no right to throw a boy off or kick him off.' That concession is in harmony with the law that makes it his duty to observe reasonable care, under the circumstances, in putting a person off the engine, even when wrongfully there. The evidence tends to show, and it must be assumed such is the fact, that when the engine driver saw the yardmaster, he said to plaintiff, 'Cheese it; the old man is coming,' and then told plaintiff to get off. The engine was then in motion, and the boy undertook to get off, as he was told to do, and in doing so was injured, as is alleged in the declaration. Conceding these to be the facts, it was negligent conduct in the engineer to direct a child only seven years old to get off the engine while in motion."    .

This case was affirmed in 24 Ill. App. 44. There the court said:

"So far as the relation of the company is concerned, the boy, whether he got on at the engineer's invitation, or against his command, was a trespasser, and it may be conceded that if, while riding upon the engine, even by

the invitation and permission of the engineer, he had been injured by reason of some negligence in the management or operation of the engine or the road, the company would not be responsible. Being a trespasser, the company would owe him no duty of protection against the ordinary perils of the position which he voluntarily assumed. But, when the injury results from the direct act of a servant of the company in endeavoring to enforce the rule of the company, a different question is presented. The boy had no right to remain on the engine, but he had a right to be exempted from the peril of gross carelessness on the part of defendant's servants in removing him therefrom, and they were bound to exercise toward him, in putting him off, care and prudence, so that in enforcing the rule of the company no injury should be inflicted, which, in view of all the circumstances, reasonable caution on their part could prevent."

In *Brill v. Eddy et al.*, 115 Mo. 596, 22 S. W. 488, plaintiff was a minor, and by his next friend sued defendants, as receiver of the Missouri, Kansas & Texas Railway Company, to recover damages for the loss of an arm. The railroad company had employed one McMahan as day watchman, whose duty it was to keep the boys off of its yard and away from its cars. While on duty he saw plaintiff and three or four other boys hanging to a car in a freight train going south through the city of Sedalia. The train was moving about ten miles an hour. As the train was passing McMahan stepped forward so as to be close to it, and when the boy approached, clinging to the train with one foot on the lower step of a ladder attached to th front end of a car, and grasping the upper rounds, with his face to the car, and apparently not seeing McMahan, the latter grabbed him, and in removing him from the car the boy fell under it and was injured. In affirming the judgment for the boy the court said:

"The boy was beyond all doubt a wrongdoer and a trespasser at the time of the accident, and he took upon himself all risks and dangers arising from the act of riding on the car. Being a trespasser, McMahan, as the ser-

vant of the defendants, had a right to put him off. Though McMahan had this right, still he was in duty bound to use ordinary care in removing the boy from the car. For injuries to the boy arising from the want of such care the defendants are liable. 1 Shearman & Redfield on Negligence (4th Ed.), sec. 89."

And in the syllabus:

"A servant of a railroad in the performance of his duty in removing a trespassing boy from the company's train is bound to exercise ordinary care."

*Kansas City, Ft. Scott & Gulf R. Co. v. William Kelly,* 36 Kan. 655, 14 Pac. 172, 59 Am. Rep. 596, was a suit by Kelly through his next friend in damages for personal injuries. There was judgment for plaintiff, and defendant appealed. The facts were that on a certain night when defendant's freight train stopped for water near Olathe, Kan., plaintiff, who had no ticket nor money to pay his fare, boarded it on his way home to Kansas City, taking his stand between the freight cars; that after the train started a brakeman came around, and, ascertaining the facts, ordered plaintiff to get off the train; that the boy then climbed the ladder on the side of the car, after saying he would get off if the train would slow up; and that upon this the brakeman stepped from the car he was on to the car where the boy was and told him to get off or he would throw him off. In obedience to this command plaintiff jumped from the train and was injured. In affirming the judgment the court said:

"The defendant had the right to put the boy off from its cars, and in doing so could use such force as was necessary to eject him, but in so doing must exercise the right with ordinary care and prudence on its part. And, if the train was moving at such a rate of speed as to render it unsafe, and the night was dark, it must stop or slow up the train; and the mere fact that the boy was on the train as a trespasser was not such negligence as to relieve the defendant from this obligation, and gave its servants no

license to negligently and wantonly eject him in a manner liable to do him great bodily harm. *Morgan v. Com'rs of Miami County*, 27 Kan. 89. And it could make no difference whether he was ejected by actual force or by threats, if he jumped from the train in obedience to a command of the brakeman."

This case was cited with approval and followed in *Folley v. C., R. I. & P. Ry. Co.*, 16 Okla. 32, 84 Pac. 1090, where the court, speaking through Chief Justice Burford, in the syllabus said:

"Where a 15 year old country boy, belonging to the colored race, who is ignorant of the means and manner of operating and managing railroad trains, goes upon a freight train at the direction of a brakeman and without right, such person is a trespasser, and the conductor may lawfully expel such boy from the train; but if such conductor, in the exercise of such authority, while the train is moving at a rate of speed rendering it dangerous to get off, by threats of violence and show of force, causes such boy to alight from the moving train and injury results, such acts of the conductor under such circumstances constitute gross negligence, or wanton and willful carelessness, and the railway company will be liable for the resulting injuries."

In *Moore v. A., T. & S. F. Ry. Co.*, 26 Okla. at page 691, 110 Pac. at page 1063, this court, quoting approvingly from *Johnson v. Chicago, St. Paul, M. & O. Ry. Co.*, 116 Iowa, 639, 88 N. W. 811, said:

"The brakeman, in the line of his duty, could lawfully expel the plaintiff as a trespasser upon the train; but if he discharged that duty with excessive force or violence, or at such time or in such manner as to unreasonably imperil the life and limb of the trespasser, then he was negligent as charged, and his employer is liable."

See, also, *Kline by His Guardian Ad Litem, v. Cent. Pac. Ry. Co.*, 37 Cal. 400, 99 Am. Dec. 282; *Benton v. C., R. I. & P. R. Co.*, 55 Iowa, 496, 8 N. W. 330; *Northwestern Ry. v. Hack*, 66 Ill. 238; *Richmond Traction Co. v. Wilkinson*, 101 Va. 394, 43 S. E. 622.

There is no merit in the contention that the court erred in overruling defendant's demurrer to the evidence at its close; this for the reason that the same is sufficient to take the case to the jury on the question of negligence. On this point it disclosed that on the day of the injury plaintiff was swimming with other boys in a hole of water on the north side of defendant's tracks in Hartshorne; that upon hearing defendant's freight train whistle as it approached going through the town eastward they all hastily put on their clothes and ran to "hop the train"; that it was running about eight miles an hour; that plaintiff approached it from the north side and boarded the first car he came to, placing one foot on the lower rung of an iron ladder at the front and corner of the third car from the engine, at the same time grasping with his hands another rung higher up; that, while so hanging, the fireman, after throwing two or three shovels of coal in the engine, looked back and saw plaintiff. The fireman testified: "I just hollered at him. I said: 'Get off there.' I hollered as loud as I could." The boy testified: That the fireman " * * * throwed his hand back, and I thought he throwed a rock at me, and I got scared and started to jump off, and my hand slipped and I didn't know what happened. Q. You did not hear him say anything to you? A. Didn't hear nothing because the switch engine made too much noise." That he had ridden some two or three car lengths when he let loose, and that he "hopped it" for the purpose of riding to the other side of the depot, some 150 yards away, where he intended to get off. That his parents had frequently told him to keep off of defendant's trains, and that he was not going to ride further than the depot, for fear that he would be caught and put in the "pen." On the strength of the authorities cited, we think this was evidence reasonably tending to prove negligence on the part of defendant and sufficient to take the case to the jury. And this, too, whether the fire-

man had or had not authority to eject trespassers from defendant's trains; this for the reason that the question here involved is not one of authority delegated by defendant to this fireman, but a question of the violation of a duty which defendant owed to the plaintiff, which duty was not negligently to injure him in putting him off the train.

In *Penas v. Chicago, etc., Ry. Co.*, 112 Minn. 203, 127 N. W. 926, 30 L. R. A. (N. S.) 627, 140 Am. St. Rep. 470:

"Plaintiff's contention was that a brakeman struck or pushed him from one of its cars while in rapid motion, so that he fell to the ground in such a way as to have his right arm and part of his left hand severed. The jury found for defendants. This appeal was taken from the order of the trial court denying plaintiff's motion for a new trial."

Upon this point, after an exhaustive review of the authorities, the court said that, if defendant was entitled to a directed verdict, plaintiff was not entitled to a new trial. In support of its contention that defendant was entitled to a directed verdict defendant urged that:

"A brakeman on a passenger train is presumed to have authority to eject from his train a person who is obviously a trespasser. But the presumption does not obtain where such person is not obviously a trespasser, and therefore the ejectment of such a person would be without the scope of his authoity."

Concerning which the court said:

"The subtlety, artificiality, and fallacy of this reasoning are apparent. The confusion as to authority and scope of authority is familiar. It might well be held that actual authority could be implied from the situation, but the liability of the master is independent of authority of that sort. It might exist, although the master is shown to have expressly forbidden the brakeman to determine the question or to expel the person from the train. The

criterion for which the defendant contends has been abandoned by courts of this and every other jurisdiction, including England and Massachusetts, for more than a century"—

and reversed and remanded the case.

This rule seems to be bottomed on the elementary principle laid down in *Standard Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480. There the court said:

"One who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the course of service. The plaintiff rests his right to recover upon this rule of law which, though of comparatively modern origin, has come to be elementary."

*Girvin, etc., v. N. Y. & H. Ry. Co.,* 166 N. Y. 289, 59 N. E. 921, is in line with this rule. The cause was one to recover damages for personal injuries alleged to have been caused by the negligence of defendant. The facts were that plaintiff, a boy of 14 years, was engaged in stealing a ride on one of defendant's freight trains; that they boarded the train while it was standing at the station, and just as the train was starting he discovered a brakeman coming over a box car onto the flat car which he was occupying. The brakeman halloed at him and ran after him. Finding the brakeman was going to overtake him and grab him, he jumped from the car, whereupon the brakeman jumped from the car on top of him and broke his leg and otherwise injured him, and then jumped back on the train. The court, in passing, said that if the assault was commenced before leaving the car, as appeared to be the case, the brakeman was acting within the scope of his employment, and the defendant was liable for his acts, and affirmed the action of the Appellate Division in reversing the nonsuit. And so we say here, as the fireman saw with the eyes of the master this trespassing boy on the train, whether he had authority

from the master to eject him therefrom is immaterial, for the reason that he was acting within the scope of his employment in ordering him therefrom as he did, and that the eyes which saw and the hand that waved and the voice that shouted were those of the master. See, also, *Singer Mfg. Co. v. Rahn*, 132 U. S. 518, 10 Sup. ⬤ 175. 33 L. Ed. 440.

But this cause must be reversed; this for the reason that, over objection of defendant, the court instructed the jury:

" * * * That, if you find that the plaintiff was upon defendant's train for the purpose of stealing a ride, he was a trespasser. And the only duty a railroad company owes a trespasser is to refrain from wantonly and willfully injuring him. In this connection the court instructs you that a willful act is an intentional act; and a wanton act is one that indicates an utter disregard of the rights of others. Therefore, unless you shall find from a preponderance of the evidence that the fireman of the defendant acted in a willful and wanton manner, and that such acts were the proximate cause of the injury, your verdict shall be for the defendant."

In the first place, the instruction is erroneous in that it is not true, as we have seen, that "the only duty a railroad company owes to a trespasser is to refrain from wantonly or willfully injuring him." While this may be the rule in some cases, it does not obtain in others, as in a case, for instance, where an engineer discovers a trespasser upon the track in a perilous position. In that case it is his duty to exercise ordinary care to avert an injury. This is called the doctrine of the last clear chance. And where, as here, after discovering this trespassing child in a perilous position, it was the duty of this fireman to exercise ordinary care not to injure him in removing him from the train. As stated, this rule is acquiesced in by the strongest advocates of the rule thus stated by the court. In choosing a theory upon which to predicate his

case, plaintiff had a right to elect, if, in his judgment, the facts were capable of a double construction (1 Shear. & Red. Neg. [5th Ed.] sec. 7), between suing on a charge of willful injury or on a charge of negligent injury, or, in other words, upon the theory. that, although a trespasser, he was entitled to recover on account of a willful injury, in that the fireman intentionally injured him by putting him off the train as. he did, or upon the theory that, although a trespasser, he was entitled to recover on account of a negligent injury, in that the fireman, after discovering his perilous position, failed to exercise ordinary care in ejecting him from the train. He chose the latter, shaped his pleading accordingly, leveled his proof to sustain it, was bound thereby, and was entitled to go to the jury, properly instructed, upon that theory. Now, precisely what the court did when the case got there was, by the charge in question, in effect, peremptorily to instruct the jury that he could not recover upon his chosen theory, but could recover only if plaintiff was a trespasser, which he undoubtedly was, or on the other theory, and proof of a willful injury. If this were all, it might well be said that this instruction cut plaintiff off from a tenable theory, and compelled him to recover upon a wholly untenable one, and might be likened to compelling him to make brick without straw and, as he recovered notwithstanding, that the error was one about which the defendant could not be heard to complain. But such is not all that can be drawn from that instruction, for, on the other hand, when the court told the jury, "therefore, unless you shall find from the preponderance of the evidence that the fireman of defendant acted in a willful and wanton manner, and that such acts were the proximate cause of the injury, your verdict shall be for the defendant," he, in effect, told them that, if they found that the fireman injured him intentionally, their verdict should be for the plaintiff. An instruction such as this, which, in effect,

tells the jury, where the *allegata* charge a negligent injury, that the plaintiff may recover should the jury find the *probata* established a willful injury, is erroneous and prejudicial to the right of defendant to have the question of its alleged negligence fairly submitted to the jury; and this for two reasons: (1) There is no evidence in the case to show, and no attempt was made to show, that defendant had any intention of injuring plaintiff; and (2) the instruction is without the issues joined.

*Benton v. Chicago, etc., Ry. Co., supra,* was a suit by the widow, the mother of deceased, who was run over and killed by one of defendant's trains. He was 11 years of age at the time of his death. The evidence disclosed that he, with several other boys, had entered an empty freight car constituting one of a train of cars which was about ready to start. Their object was to steal a ride to Victor. Soon after they entered the car the conductor discovered them and ordered them out in a rough tone of voice and when the train was moving. The only means of escape from the car was through a window in one end, and in attempting to crawl out of the window deceased lost his hold and fell to the ground, and was run over and killed. The plaintiff averred that defendant was negligent in compelling deceased to leave the car while the train was in motion, which was denied, and contributory negligence pleaded. There was judgment for plaintiff. In reversing the case the court said:

"The court gave an instruction as follows: 'Before the plaintiff can recover she must have satisfied you by a preponderance of the testimony that her minor son was injured by a train on the defendant's road, and that such injury was in consequence of the neglect of the agents or employees of the defendant, or their willful wrongs.' The defendant complains that the instruction presents an issue to the jury which does not exist in the case. There is certainly neither averment nor proof that the defendant had the slightest intention of injuring the deceased. The

plaintiff's claim rests solely upon the defendant's negligence. A suggestion in the instruction that there was an issue in regard to the defendant's willful wrong was possibly not without prejudice, and the instruction, it appears to us, is objectionable upon that ground. It was the defendant's right that the jury should be restricted to the issues upon which the case had been tried. *De Camp v. M. & M. R. Co.*, 12 Iowa, 348; *Cooke v. Ill. Cent. R. Co.*, 30 Iowa, 202; *Brink v. Morton et al.*, 2 Iowa, 411."

In *Greathouse v. Croan*, 4 Ind. T. 668, 76 S. W. 273, the only question before the court was whether the plaintiff would be entitled to recover on proof showing a willful and intentional shooting, although the complaint only averred a negligent one. The trial court charged that he would, but the charge was held error, and the cause reversed. The court, quoting approvingly from 1 Shearman & Redfield on Negligence (5th Ed.) section 7, said:

"It is clear that the plaintiff may elect between suing on a charge of willful injury or on a mere charge of negligence, wherever the facts are capable of a double construction. It does not lie with the defendant to insist that he has been criminal, instead of merely careless. In making his election, however, the plaintiff must remember that he will be bound by it. If the complaint sets up a case of willful injury, it cannot be sustained by evidence of mere negligence, however gross; while, on the other hand, if it charges negligence only, the plaintiff cannot put in evidence of facts the only relevancy of which consists in proving intentional injury, such as would sustain an entirely different action. Any degree of negligence may be proved under a general averment of negligence, but nothing more."

And, further, that:

"When plaintiff charges negligence, and not willful injury, he cannot prove the latter. *Railroad Co. v. Smith*, 98 Ind. 42; *O'Brien v. Loomis*, 43 Mo. App. 29. In the case of *O'Brien v. Loomis, supra*, the court say: 'We are of the opinion that there is a fundamental error running through these instructions, in that they authorize a recovery on the hypothesis of the injury having been "in-

tentional," or that the gun was fired "intentionally" at the plaintiff, the defendant "intending to wound and injure her"; whereas the petition does not allege that the injury was willful or intentional, but alleges that it was negligent. * * * The petition, therefore, claims damages for an injury the result of negligence, and the instruction authorizes the jury to give damages on the hypothesis of willfulness and an intent to injure. We are of the opinion that this case falls within the well-settled rule that the issues made by the pleadings cannot be broadened by the instructions. The last element of negligence, and that which distinguishes it from fraud or other willful injury, is the absence of any distinct intention to produce the precise damage to the plaintiff which actually follows as a result of the negligence. If such an intention is alleged in a complaint, the action is based upon willful injury, and can only be sustained upon that ground. If it is not so alleged, evidence of an actual intent to cause the damage which is the basis of the action is inadmissible. But it often happens that evidence comes out at the trial in a perfectly proper way, from which a jury might fairly infer actual malice, and occasionally of such a nature that no sensible man could infer anything less. In such cases, no malice being pleaded, the plaintiff's counsel ought not to be allowed to argue to the jury that it was a case of real malice, and the court should carefully instruct the jury that they cannot award damages upon any theory more severe than that the defendant had been so grossly negligent as to be indifferent whether he injured the plaintiff or not.' Shear. & Red. Neg. (5th Ed.) sec. 19."

This case was cited with approval by this court and the doctrine followed in the case of *A., T. & S. F. Ry. Co. v. Baker,* 21 Okla. 53, 95 Pac. 433, 16 L. R. A. (N. S.) 825, where the court said:

"There is no allegation in the complaint of willful or intentional acts of commission or omission on the part of the plaintiff in error, its servants or employees; neither was there any proof that reasonably tended to indicate any willful or intentional acts of commission or omission. There being no allegation in the complaint or evidence in the record upon which to predicate such instruction, it

was error to give it. The authorities cited by the Court of Appeals in its opinion, *supra*, to wit, *East Tenn. Coal Co. v. Daniel*, 100 Tenn. 65, 42 S. W. 1062; *Jacquin v. Grand Ave. Cable Co.*, 57 Mo. App. 320; *Greathouse v. Croan* (an Indian Territory case), 4 Ind. T. 668, 76 S. W. 273, fully support the proposition."

But, to make it further impossible for us to discover upon which of these two theories plaintiff recovered, the court after instructing, as we have seen, in effect, that he could only recover upon proof of an intentional injury, immediately thereafter instructed the jury thus:

"You are further instructed that if you find from the evidence that defendant's servants saw the plaintiff on the car in a perilous condition, and knew of the peril of his position while in such position, and failed to use 'ordinary and reasonable care to avoid injury to plaintiff, such failure in connection with such knowledge of the situation of the plaintiff (if you so find), and the probable consequence of the omission of preventive effort to avert injury, when such might have been effectual to avoid accident and injury, is gross negligence or wantonness, for which defendant is liable."

Correcting the punctuation, it reads:

"You are further instructed that if you find from the evidence that defendant's servants saw the plaintiff on the car in a perilous position, and knew of the peril of his position, and failed to use ordinary and reasonable care to avert injury to the plaintiff,. such failure (in connection was such knowledge of the situation of the plaintiff, if you so find, and the probable consequence of the omission of preventive effort to avert injury), when such effort might have been effectual to avoid accident and injury, is gross negligence or wantonness, for which defendant is liable."

Now, this instruction charges on the doctrine of the last clear chance, and is in keeping with the theory of negligence upon which the suit was brought, and might have been applicable if, instead of telling the jury as it does that defendant would be liable if after plaintiff's. peril

was discovered defendant failed to use ordinary and reasonable care to avert the injury, the charge had told the jury that defendant would be liable if after that time it failed to use ordinary and reasonable care under the circumstances in putting him off or in requiring him to leave the train. Now, in the language of *Tognazzini v. Freeman et al.*, 18 Cal. App. 468, 123 Pac. 540:

"The complaint in every action should be founded upon a theory; and the plaintiff is entitled to have the jury instructed by the trial court upon the law applicable to the theory upon which the cause of action is founded. *Buena Vista, etc., Co. v. Tuohy,* 107 Cal. 243, 40 Pac. 386; *Renton Holmes Co. v. Monnier,* 77 Cal. 449, 19 Pac. 820; *Buckley v. Silverberg,* 113 Cal. 673, 45 Pac. 804."

That was a suit to recover damages for an injury alleged to have been willfully inflicted, or for an intentional injury. After the court had charged upon that theory, he charged on the theory of negligence. On review, referring to the charge of willful injury, the court, in reversing the cause, said:

" * * * This theory of the case, however, was so absolutely opposed to the subsequent instruction, which limited the plaintiff's cause of action solely to the defendant's negligence, as to make it impossible for us to determine which of the two conflicting theories was followed by the jury; and therefore the erroneous instruction must be deemed to have been prejudicial. *Le Masters v. S. P. Co.,* 131 Cal. 105, 63 Pac. 128; *Rathbun v. White,* 157 Cal. 248, 107 Pac. 309."

In holding, as we do, that this error is prejudicial and reversible, we are not unmindful that we cannot reverse this judgment on the ground of this misdirection of the jury unless, in our opinion, the same affects the substantial rights of the defendant. Rev. Laws 1910, secs. 4791, 5031. And such it does. Rev. Laws 1910, sec. 5002, requires the trial court to give general instructions to the jury as to the law governing the case. Construing these

sections together, we hold that the instructions in question were so conflicting that they did not come up to a substantial compliance with that requirement, and hence deprived defendant of the right to have the jury so instructed. Neither can we affirm the judgment on the ground that it is so clearly right that had it been different it should have been set aside. When such is the case, error in the instructions is immaterial. *Shawnee Nat. Bank v. Wootten & Potts,* 24 Okla. 425, 103 Pac. 714. In order to be so clearly right, we should be able to say that the facts in this case constitute negligence at law. But we cannot say this, for the reason that, while the facts are undisputed, they are such that all reasonable men might not draw therefrom the conclusion that defendant was negligent. When such is the case, such question is one for the jury. *Sans Bois Coal Co. v. Janeway,* 22 Okla. 425, 99 Pac. 153; *St. Louis & S. F. R. Co. v. Copeland,* 23 Okla. 837, 102 Pac. 104; *Mean v. Callison,* 28 Okla. 737, 116 Pac. 195.

Reversed and remanded for new trial.

All the Justices concur, except KANE, C. J., and HARDY, J., who dissent from that part of the opinion involving the instructions only.