## ST. LOUIS & S. F. R. CO. et al. v. BOUSH.

No. 6583—Opinion Filed June 11, 1918.

Rehearing Denied Aug. 13, 1918.

(174 Pac. 1036.)

(Syllabus.)

1. **Railroads—Frightening Animals—Willful Conduct of Engineer and Fireman—Evidence.**

In an action for damages for personal injuries against a railway company and the engineer and fireman operating one of its locomotives, caused by a horse on rural premises adjacent to the tracks taking fright at the sounding of the whistle, alleged in the petition to have been sounded by the engineer and fireman knowingly, willfully, wantonly, and maliciously, with the purpose and intent to frighten the animal, which is denied in the answers, held, that the evidence stated in the opinion does not reasonably tend to support a verdict for plaintiff on that issue.

2. **Same — Negligence — Allegation and Proof.**

Where the petition, in an action against a railway company and the engineer and fireman operating one of its locomotives, alleges that defendants, with the purpose and intent to frighten a horse drawing a vehicle on premises adjacent to the tracks, willfully, wantonly, and maliciously commenced to sound the whistle, and, seeing the effect of the noise, willfully, knowingly, negligently, wantonly, and intentionally, and only for the purpose of gratifying a base curiosity and malignant spirit, continued blowing the whistle, in consequence of which injuries were inflicted on the driver, recovery cannot be had when the evidence tends to show no more than mere negligence on part of the defendants.

3. **Negligence — Contributory Negligence — Question for Jury—Power of Court.**

Under article 23, § 6 (Williams' § 355) of the Constitution, in all cases whatsoever where contributory negligence is a proper defense, the defendant has the right to have the question left to the jury as one of fact. The court has not the power to refuse to submit the defense under proper instructions because of the opinion that the facts proven, if true, do not, as a matter of law, constitute contributory negligence, or are insufficient to support a verdict for defendant on that issue.

Error from District Court, Comanche County; J. T. Johnson, Judge.

Action by Nathaniel Boush against the St. Louis & San Francisco Railroad Company and others, continued, after plaintiff's death, in the name of Anna H. Boush, as administratrix. Judgment for plaintiff, motion for new trial overruled, and defend-

ants bring error. Reversed, and cause remanded for a new trial.

W. F. Evans, R. A. Kleinschmidt, and E. H. Foster, for plaintiffs in error.

Chas. Mitschrich, for defendant in error.

MILEY, J. This action was commenced in the court below by Nathaniel Boush against plaintiffs in error to recover damages for personal injuries sustained by him. While the action was pending, the plaintiff, Nathaniel Boush, died, and the cause was revived and continued in the name of the defendant in error, Anna H. Boush, as administratrix of his estate. There was trial to a jury, and upon their verdict judgment rendered in favor of defendant in error and jointly against the plaintiffs in error. Motion for new trial having been overruled, plaintiffs in error, defendants below, bring the cause here for review. The parties will hereinafter be referred to according to their designation in the trial court.

It was charged in the amended petition, upon which the cause was tried, that the said Nathaniel Boush was riding in a two-wheel cart drawn by a horse, and that at a point near the tracks of the defendant railway company, the horse took fright at the sounding of the whistle of a locomotive engine being operated by the defendant Nichols as engineer and the defendant Weber as fireman, and drawing a freight train of the defendant railway company; and that by reason thereof the horse ran away and the said Nathaniel Boush was thrown from the cart and thereby sustained the injuries complained of. The allegations of the amended petition pertaining to the liability of the defendants are as follows:

"The said agents and employes of said defendant railroad company, to wit, said defendants D. C. Nichols and John Weber, engineer and fireman, respectively, in charge of said locomotive engine, with the purpose and intent to frighten the said Nathaniel Boush's said mare, willfully, wantonly, and maliciously commenced, and continued, until said Nathaniel Boush was thrown from said cart and injured as hereinafter stated, to blow the whistle of said engine, in a manner more calculated to frighten and render unmanageable, horses, and other domesticated animals; that the manner of blowing said whistle at the time and place above mentioned was not called for nor demanded by any event or circumstances within the range of said defendant's legitimate business; that when the said agents and employes of said defendant railway company began to near a point directly north of said horse, they began to give, and continued to give, keen and frightful sounds in quick and rapid succes-

sion, by means of the whistle, the immediate effect of which was to frighten the said mare which the said Nathaniel Boush was then and there driving, causing said mare to leap, jump, and kick in the most violent manner, and to get beyond the control of the said Nathaniel Boush, and to run away with the said Nathaniel Boush without any fault on his part and despite his utmost efforts to keep said mare under control; that by reason of such leaping, jumping, and kicking and getting beyond his control and running away of said mare with the said Nathaniel Boush, he, Nathaniel Boush, was placed in great danger of being killed, and was then and there thrown from said cart and his leg broken in five places, and he was greatly bruised in his body and was internally injured, and his nervous system was greatly shocked, and he suffered serious and permanent bodily injury and great physical pain and mental anguish.

"Plaintiff further alleges that the said defendants D. C. Nichols and John Weber, who were then and there the employes of the said defendant railroad company, saw the effect of said frightful noise on said mare which Nathaniel Boush was driving, when the whistle commenced and while the same was going on, and might have ceased making the same, but for no legitimate purpose did, willfully, knowingly, negligently, wantonly, and intentionally, and only for the purpose of gratifying a base curiosity and malignant spirit, commenced and continued blowing said whistle in the most frightful manner of which they were capable, thereby causing the injuries to said Nathaniel Boush, as aforesaid and by causing said Nathaniel Boush to be thrown from said cart and injured as hereinbefore set forth."

The defendants separately answered, by general denials and pleas of contributory negligence.

The evidence disclosed that the injuries were sustained on certain premises under the control of D. B. McIntire. The tract of land was one mile long from east to west, and one-fourth mile wide from north to south. The tracks of the defendant railway company traversed the premises from east to west practically through the middle thereof. North of the tracks was the cultivated land and the farm houses. The portion of the premises south of the track was a pasture. The railroad right of way was fenced, and at a point about 100 yards from the east line of the premises was a private crossing on the tracks and gates in the fence so as to permit passage from one portion of the farm to the other. The barn was north of the tracks and slightly west of this private crossing. Near the west line of the farm, and on defendant railroad

company's right of way, it had a flag station. There was a public road along the west line, and also one along the east line of the farm. At a point 80 rods east of each of these public roads was a whistling post, at which point it was the duty of the engine men operating westbound trains to commence giving the warning required by statute. East of the farm and about midway between the public road and the crossing whistle board was another whistling board, at which point it was usual and customary to sound the whistle to indicate that the train was approaching the flag station heretofore referred to.

The said Nathaniel Boush, accompanied by his daughter, Anna Boush, and said McIntire, was driving his cart east along a private road in the pasture and off the right of way. According to the testimony of McIntire, a witness for plaintiff, while the horse was traveling at a slow pace and the cart was about 50 yards from the railroad track and the engine was at a point south of the barn and a little west of the private crossing the whistle was sounded, the horse commenced to run, and after running about 100 yards, Mr. Boush was thrown out. The witnesses said that the whistle "had a short, jerky sound," which continued from the time the horse commenced to run until Mr. Boush was thrown out; that he heard three or more blasts, but how many more he would not say, as his attention was directed toward stopping the runaway. He further testified that when the engine was just west of the private crossing, he saw one man in the cab window and another standing in the gangway between the engine and tender on the south or left-hand side of the engine; that these two men were laughing at them; and that he did not observe them make any other sign or signal. He also testified that there was no object on the track ahead of the engine.

The only other witness for the plaintiff as to the accident was Anna Boush, then 9 years of age, and at the time of the trial about 11. She testified that she first observed the train while it was yet east of the crossing of the public road along the east line of the McIntire premises, and that just before the engine got to the road "it whistled one great long whistle," and after the engine passed over the public road, but before reaching the private crossing, "it whistled two little short jerks, and the horse put up her ears and began to prance." She testified that Mr. Boush then turned away from the track, driving in a southeasterly

direction, and, when the engine was west of the private crossing, a succession of short blasts of the whistle were sounded. She further testified that, at the time the two short blasts of the whistle were sounded between the public road crossing and the private crossing, she saw one of the men in the cab looking ahead out of the front window and straight down the track, and that after the engine had passed over the private crossing, and after the whistling had again started, she saw two men standing in the cab window and looking toward them, and it "looked like they were laughing," and the whistling continued after she saw them looking at the cart and until Mr. Boush was thrown out.

On the part of the defendants it was proven that it was customary to sound the whistle by giving two long and two short blasts at or near the whistling post 80 rods from the public road crossing. It was also proven that at or near the station whistling post one long blast of the whistle should be sounded to notify the trainmen that the train was approaching the station. The train in question was a local freight, and, after the whistle was sounded for the station, if the trainmen did not desire to stop at that station, they indicated that fact to the engineer by signaling with the hand, and it was then the duty of the engineer to sound two short blasts of the whistle to indicate that he had received the signal and would not stop. It was also proven that upon this occasion this train carried no freight to be unloaded at the flag station mentioned, and that no stop was made there. According to the evidence of the defendants, it was not necessary to again sound the whistle in the ordinary operation of the train until the engine was at or near the whistling post, 80 rods east of the public road running along the west line of the McIntire premises, and something more than 1,000 yards west of the private crossing.

There was also evidence on the part of the defendants that the whistle could be manipulated only from the engineer's side of the cab, and that it was impossible for one in the gangway or the cab window on the fireman's side to sound the whistle. The boiler on the engine on the train in question projected into the cab and was between the seat on the engineer's side and that on the fireman's side. It was also proven that the engineer's station is on the right-hand side of the engine, and as the train in this instance was going west, the engineer's station was on the north side. According to defendant's witnesses, it was impossible for

either of the two men, who the witnesses for the plaintiff testified were looking at them from the south side of the engine, to have sounded the whistle from that position. From their evidence it further appears that one at the engineer's place in the cab on the north side of the engine could not have seen the occupants of the vehicle on the south side of the track after the horse first became frightened. The defendant Nichols, the engineer, testified that he did not see the horse and cart, or any of the occupants, or know anything about the accident until some time afterwards, when he was informed by the claim agent of the railway company. He further testified that he did not, on this occasion leave his station on the north or righthand side of the engine and cross over to the fireman's side. The defendant Weber, the fireman, testified that he had been "putting in fire," and that while passing through the McIntire farm he took his position on the fireman's seat on the south side of the engine, and, upon looking out and to the rear, saw a cart and horse with a man standing near and also a little girl, and some object on the ground, all on the south side of the track. He testified that he did not sound the whistle, and denied that he laughed at the parties. He also testified that he did not inform the engineer of what he had seen. Neither the engineer nor the fireman gave direct testimony as to whether the whistle was sounded by the engineer on this occasion. They did not expressly deny that the succession of short blasts of the whistle were sounded west of the private crossing. But, if their testimony is true, the fair and reasonable inference therefrom is that the only use made of the whistle was in giving statutory warnings and signals usual and necessary in the operation of the train.

Each of the defendants challenges the sufficiency of the evidence to support the verdict, and assigns as error the action of the trial court in refusing to direct a verdict. The question presented as to each defendant is, admitting the truth of all the evidence of the plaintiff, together with such inferences and conclusions as may be reasonably drawn therefrom, and entirely eliminating from consideration all evidences of the defendant in conflict with that of plaintiffs and opposing inferences, whether there is any competent evidence reasonably tending to support the verdict against such defendant. Harris v. M., K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858.

Tested by this rule, the evidence is sufficient to warrant the conclusion that the horse was frightened and caused to run away by the sound of the whistle of the locomotive, in consequence of which the plaintiff's decedent sustained injuries. And there is evidence that two men on the lefthand or south side of the engine were aware of the effect the sounding of the whistle was having on the horse, and since the defendant Weber was fireman and his station was on that side, and he admits seeing the parties immediately after the accident, the inference is reasonable that he was one of the two men. He testified that he did not sound the whistle. There is not only no direct evidence contradicting him, but no evidence from which the inference may reasonably be drawn that he did. The uncontradicted evidence is that the whistle could not be manipulated or controlled from the fireman's side, but only from the engineer's side, where the defendant Nichols was stationed. From the evidence of the plaintiff and the uncontradicted evidence of the defendant, no other reasonable inference can be drawn than that the whistle was sounded by the engineer, Nichols, and not the fireman Weber. It is quite clear that the motion of the defendant Weber for a directed verdict in his favor should have been sustained. As to the other defendants, it seems to be conceded that if the defendant Nichols is liable, the railway company is also. But was the evidence sufficient to support a verdict against Nichols? We think not. The evidence does tend to show that he sounded the whistle which frightened the animal. But there is no evidence that he sounded it with the purpose and intent of frightening the horse, or that he saw or knew the effect thereof, or that his act was willful, wanton, or malicious. He testified that he did not see them, and did not know the parties were in the vicinity, or that an accident had happened, until some time afterward. Under the circumstances, it was not his duty to keep a lookout for persons in the vicinity of the tracks. C., R. I. & P. v. Hine, 59 Okla. 143, 158 Pac. 597. If this testimony is true, it cannot be said that his act was willful, wanton, or malicious, or done with the intention to frighten the animal. There is no direct evidence that he did see the vehicle and its occupants, or that he knew the effect sounding the whistle would have, or was having on the horse. In view of the uncontradicted evidence as to the situation of the devices for manipulating the whistle, it is not reasonable to infer that either of the two men seen by plaintiff's witnesses on the south side of the

locomotive, whether both were at the window, or one at the window and the other in the gangway, looking at the runaway and laughing while the whistle was being sounded, was the engineer, Nichols. It was not possible to reach the whistle cord from their position. Besides, neither of the witnesses for plaintiff, though they observed these men closely enough to remark the expression of their countenances testified to observing any movement indicating that they were sounding the whistle. While for the purpose of the motion it must be assumed that there were two men looking out from the south side of the cab, it does not follow that one of them was the engineer. The position of the head brakeman at the time was not otherwise accounted for, and the only reasonable inference to be drawn from the fact that there were two men on that side, in view of other uncontradicted evidence, is that one was the fireman and the other this brakeman. It was not possible, on account of the boiler projecting into the cab, for the engineer, at his station on the north side of the cab, to see the horse and the occupants of the vehicle on the south side of the track during or immediately before the locomotive reached the private crossing, after which, according to all the evidence on the point, the horse became frightened. We are clearly of the opinion that there is not sufficient evidence reasonably tending to support the allegation of the petition that the injury was willfully, wantonly, intentionally, or maliciously inflicted. There is evidence tending to prove that the sounding of the whistle which frightened the horse was unnecessary. According to the evidence of the defendants, after the signal for the station, and the two short blasts were sounded in response to the signal not to stop, it was not necessary to again sound the whistle in the ordinary and usual operation of the train until the whistling post for the crossing at the west side of the farm was reached, something more than 1,000 yards from the private crossing. Anna Boush testified that one long blast of the whistle, that for the station, was given before the public road along the east side of the farm was reached, and two short blasts, the answer to the signal to not stop, were sounded between this public road and the private crossing. So there was no necessity for sounding the short blasts thereafter and near the private crossing testified to by the witnesses for plaintiff, and which, according to their testimony, frightened the horse and caused the runaway.

The railway company and its employes in charge of its instrumentalities owe to persons lawfully in the vicinity of its tracks the duty to exercise ordinary care not to injure them. Whether the mere unnecessary blowing of the whistle would constitute a failure to exercise such care is, as a general rule, dependent on the circumstances of each particular case, and is perhaps ordinarily a question of fact for the jury. C., R. I. & P. Ry. Co. v. Hines, supra. But it is unnecessary to determine the question in this case, and we express no opinion thereon. For, assuming that the evidence was sufficient to go to the jury on an issue of failure to exercise ordinary care, that was not one of the issues here. This action was for a willful or intentional injury, and not for a mere negligent injury. There can be no doubt of the theory of the case as derived from the petition. Liability of the defendants was predicated on the allegation of fact that the whistle was sounded "with the purpose and intent to frighten", that the employes of the defendant railway company "saw the effect of said frightful noise," and, "only for the purpose of gratifying a base curiosity and malignant spirit", commenced and continued blowing said whistle, which conduct is properly characterized in the petition as "willful", "wanton", "malicious", and "intentional", and is not merely "negligent".

The case was tried upon the theory of a willful injury. That the trial court regarded actual knowledge on the part of the employes of the railway company of the presence of the deceased in the vicinity and his peril as an essential element of liability is clear from the ninth and tenth instructions given the jury, and not objected to by plaintiff, as follows:

"You are instructed that if you believe and find from the evidence in this case that the defendant D. C. Nichols, as engineer, was in sole charge of the mechanism and appliance used in the operation of said engine and in the sounding of signals, and that said engineer did not see the deceased nor the horse being driven by him before or at the time of the blowing of said whistle, and was not aware of the peril of said deceased, then the railroad company nor said engineer would not be liable for the fright of said horse and the consequent injury of said deceased, notwithstanding that the fireman may have seen the deceased and been aware of his peril.

"You are instructed that if you believe and find from the evidence in this case that the defendant D. C. Nichols did not see the deceased nor the horse being driven by him, and did not know of the peril of said deceased or the fright of said horse, prior to or at the time of the sounding of the loco-

motive whistle, then your verdict should, be in favor of said defendant."

The theory of the plaintiff, even at this time, is put beyond the pale of controversy by the statement, at one place in the brief:

"The plaintiff's case was based on the proposition that they (the engineer and fireman) did look and saw the predicament of those in the vehicle."

There seems to .be no basis for the suggestion that the petition was. framed on the dual theory of negligent and intentional or wanton injury.

In Tognazzini v. Freeman, 18 Cal. App. 468, 123 Pac. 540, from which this court quoted with approval in C., R. I. &. P. R. R. Co. v. Matukas, 47 Okla. 302, 147 Pac. 1038, L. R. A. 1917C, 1066, it is said:

"Ordinarily, and likewise in the law, there is a decided and well-defined distinction between mere 'negligence' and 'willfulness'. Negligence is opposed to diligence, and signifies the absence of care. It is negative in its nature, implying a failure of duty, and excluding the idea of intentional wrong; and it follows that the moment a person wills to ·do an injury, he ceases to be negligent."

See, also, Proctor v. Southern Ry. Co., 61 S. C. 170, 39 S. E. 35; and Wilson v. Chippewa Valley Electric R. R. Co., 120 Wis. 636, 98 N. W. 536, 66 L. R. A. 912.

While there are some authorities holding to the contrary, the weight of authority is that, in an action to recover damages for an alleged willful or intentional injury, recovery may not be had on proof of negligence merely. Birmingham Mineral R. R. Co). v. Jacobs, 92 Ala. 187, 9 South. 320, 12 L. R. A. 830; Highland Ave. & Belt R. R. Co. v. Wimm, 93 Ala. 306, 9 South. 509; Lewis v. Memphis & Charleston R. R. Co., 109 Ala. 332, 19 South. 395; C., B. & Q. R., R. Co. v. Dickson, 88 Ill. 431; I., B. & W. Ry. Co. v. Overton, 117 Ind. 253, 20 N. E. 147; Tognazzini v. Freeman, supra; Wilson v. C. V. Electric R. R. Co., supra; Turtenwald v. Wis. Lakes Ice & Cartage Co., 121 Wis. 65, 98 N. W. 948. In Proctor v. Southern Ry. Co., supra, the Supreme Court of South Carolina held that where the complaint in an action against a railway company alleged that defendant "willfully, wantonly and recklessly", with intent to injure plaintiff, let off steam from its engine and blew the whistle, thereby frightening plaintiff's team at a crossing, an instruction that the jury may give damages arising from negligence alone was erroneous. In C., R. I. & P. Ry. Co. v. Matukas, supra, this court in the ma-

jority opinion recognized the distinction between causes of action for injuries willfully, or intentionally inflicted and injuries resulting from negligence or failure to exercise ordinary care, and in keeping with the weight of authority held that, in an action for damages, where the petition alleged the injury to have occurred through negligence of defendant, it was error to instruct that recovery could be had on the ground of willful injury, because, among other reasons, the instruction was without the issue joined. Logically the converse of this proposition is true. Wilson v. C. V. Electric Ry. Co., supra. We therefore conclude that under the issues joined by the pleadings, the plaintiff was not entitled to recover on proof of a mere negligent injury. And, the evidence being insufficient to support the verdict on the cause of action alleged, the motions of each of the defendants for a directed verdict should have been sustained.

The conclusion reached on the first assignment of error renders it really unnecessary to consider the remaining assignments; but, in view of the possibility of another trial, we think it proper to refer briefly to two others. Instructions Nos. 2 and 3 are erroneous in so far as they submit the issue of negligence in giving statutory warnings for the public crossing. That was not an issue made by the pleadings, and there was no evidence tending to prove that the horse was frightened thereby. Moreover, as an abstract proposition of law, they are incorrect, in that they are susceptible of the construction that it is the duty of enginemen to ascertain whether the warning signals required by law could be given without endangering others by frightening animals near the tracks. In other words, if these instructions correctly state the law, it would seem to be the duty of enginemen to survey the adjacent highways and surrounding territory to ascertain whether it would be prudent to sound the whistle or ring the bell for the public crossing as required by statute. So far as we have been able to discover, no adjudicated case imposes this burden under the circumstances disclosed by this record.

Furthermore, if it had been proper to submit the issue of negligent injury, it was error to refuse to submit the issue of contributory negligence as a defense thereto, as requested by defendants. Perhaps the trial court was of the opinion, as contended by defendant in error in her brief, that the evidence was insufficient to raise the issue. If we were permitted to consider that ques-

tion, we might so hold. But under the Constitution of this state (article 23, par. 6 [Williams' par. 355]):

"The defense of contributory negligence * * * shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

This court has frequently passed on that provision. In C., R. I. & P. Ry Co. v. Beatty, 27 Okla. 844, 116 Pac. 171, it was held that the fact of contributory negligence must be found by the jury under proper instructions, though there was no conflict in the evidence thereon. In Pioneer Hardwood Co. v. Thompson, 49 Okla. 502, 153 Pac. 137, we held that under this provision of the Constitution the court has not the power to instruct the jury that, if they believe from the evidence certain facts exist, such facts as a matter of law constitute contributory negligence. Also in Wichita Falls & N. W. Ry. Co. v. Woodman, 64 Okla. 326, 168 Pac. 209. In St. L. & S. F. Ry. Co. v. Hart, 45 Okla. 659, 146 Pac. 436, it was held, pursuant to this provision, that in no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law. To the same effect are numerous other decisions. The defendant, in an action predicated on negligence, has the same right as the plaintiff in all cases whatsoever, when contributory negligence is a proper defense, to have the question left to the jury as one of fact. The court has not the power to refuse to submit the issue under proper instructions when requested, because he is of the opinion that the facts proven, if true, do not, as a matter of law, constitute contributory negligence or are insufficient to support a verdict for defendant on that issue. Under this provision of the Constitution, the court has no more right to instruct the jury that the defense of contributory negligence has not been made out, which is done in effect when the issue is not submitted because of the insufficiency of the evidence, than it has to instruct the jury that the defense has been made out, and the verdict should be for defendant. C., R. I. & P. Ry. Co. v. Hill, 36 Okla. 540, 129 Pac. 14, 43 L. R. A. (N. S.) 622.

The failure to submit contributory negligence as a defense deprived the defendant of a constitutional right within the meaning of section 6005, Rev. Laws 1910, and for that reason alone it would be necessary to set aside the judgment. For the reasons stated, the judgment is reversed, and the cause remanded for a new trial.

SHARP, C. J., and TURNER and RAINEY, JJ., concur. KANE, J., concurs in conclusion. HARDY, OWEN, TISINGER, and BRETT, JJ., not participating.